NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-776                                          Appeals Court

ADOPTION OF VIRGIL.[1]


No. 17-P-776.

Essex.     January 9, 2018. - May 30, 2018.

Present:  Trainor, Massing, & Singh, JJ.


Adoption, Care and protection, Dispensing with parent's consent,
    Visitation rights.  Minor, Adoption.  Parent and Child,
    Adoption, Dispensing with parent's consent to adoption.
    Evidence, Medical record.



Petition filed in the Essex County Division of the Juvenile
Court Department on December 1, 2014.

    The case was heard by José A. Sánchez, J.


    Lynn M. Isaman for the mother.
    Richard A. Salcedo for Department of Children and Families.
    Rachel T. Rose for the child.


    TRAINOR, J.  The mother appeals from a decree of the

Juvenile Court finding the child to be in need of care and

protection, terminating her parental rights to the child, and

_____

        [1] A pseudonym.

declining to order posttermination and postadoption visitation.[2] The mother argues that the judge erroneously found a nexus between the mother's substance abuse, poverty, and homelessness, and her ability to provide minimally adequate care of the child. The mother additionally argues that the judge erroneously admitted and relied upon her substance abuse treatment records in reaching his findings. We affirm.

Background. We summarize the relevant facts and procedural history as set forth in the judge's decision and as supported by the record. The child, Virgil, was born in February, 2010. The Department of Children and Families (department) first became involved with the mother and Virgil in August of 2014 when Virgil's pediatrician filed a G. L. c. 119, § 51A, report (51A report) alleging the mother's neglect of Virgil. The report specifically alleged that the mother was unable to attend to Virgil's hygiene due to her severe depression.[3] Within the same month, another 51A report was filed alleging "deplorable conditions" in the mother's apartment. That report alleged that there were flies everywhere, trash on the floor and on the

---

[2] The father's parental rights were also terminated; he is not involved in this appeal.

[3] The pediatrician stated that Virgil was being treated for a severely infected penis caused by poor hygiene.

kitchen stove, and a strong odor of cat urine. Both 51A reports were supported by the department.

During an investigation conducted by the department, Virgil's doctor's office reported that the mother was inconsistent with Virgil's medical care, missing more than twenty scheduled appointments for Virgil. In September, 2014, the mother was charged with larceny pursuant to a single scheme of an amount over $250. In October, 2014, the mother was evicted from her apartment. Using funds provided by Compass for Kids, the mother moved to a new apartment. During that same month, the mother was arrested for open warrants pertaining to previous motor vehicle and larceny charges. The department was notified after the mother was unable to make arrangements for Virgil at the time of her arrest. After the mother posted bail, an emergency response worker from the department accompanied the mother to her new apartment to determine its suitability. The emergency response worker observed old food on the counters, dirty dishes piled in the sink, overflowing trash, black trash bags piled around the apartment, and clothes strewn throughout. On November 28, 2014, a department social worker made an unannounced visit to the mother's apartment. Upon arriving, the social worker heard the mother screaming and yelling obscenities at Virgil. Once inside the apartment, the social worker observed that the apartment was "filthy," filled with trash,

piles of clothes, and broken items.  The department removed Virgil from the mother's care that same day due to the mother's mental health issues and the apartment's condition.

On December 1, 2014, the department filed a petition with the Juvenile Court, pursuant to G. L. c. 119, § 24, asserting that Virgil was in need of care and protection.  The department was granted emergency temporary custody.  The mother thereafter signed a service plan with the department but ultimately was unable to complete any of the service plan tasks.  Starting in June of 2015, the mother failed to attend any of the scheduled visits with Virgil.  On August 18, 2015, the department filed its notice of intent to seek termination of the mother's parental rights to Virgil.

In September, 2015, the mother was referred to Habit Opco, a drug abuse treatment facility, after she had been admitted to Lawrence General Hospital for a drug overdose.  Upon admission to Habit Opco, the mother tested positive for opiates, cocaine, and buprenorphine.  The Habit Opco drug abuse treatment records indicate that the mother informed counsellors that she started using opiates five years prior to her admission and heroin four months prior, and that she was currently using two bags of heroin daily.  From March of 2015 to March of 2016, the mother was in and out of several shelters, was arrested for trespassing, and was reprimanded by, as well as asked to leave,

various shelters for aggressive behavior.  On March 16, 2016, the mother entered a drug treatment program at Women's View, where it was noted that she had a significant risk of relapse. On April 8, 2016, in the middle of trial, the mother was arrested and charged with breaking and entering.  A few days after her arrest she was allowed to reenter a shelter, where she tested positive for benzodiazepines.

On or about December 4, 2015, and March 30, 2016, the department filed motions for disclosure of the mother's substance abuse treatment records from Habit Opco and Women's View, respectively; both motions were allowed.  After a seven-day trial,[4] the judge found the mother unfit and the child in need of care and protection, terminated the mother's parental rights, and declined to order posttermination and postadoption visitation.

Discussion.  1.  Termination of parental rights.  In order to terminate a parent's rights, the department must first prove and the judge must find, based upon the record evidence, that the parent is currently unfit to further the best interests and welfare of the child, and, as a result, the child is in need of care and protection.  See Custody of a Minor, 389 Mass. 755, 766 (1983); Adoption of Ramona, 61 Mass. App. Ct. 260, 262-263

---

[4] Trial was conducted on March 18, 30, and 31; April 13 and 28; and May 11 and 19, 2016.

(2004). A determination of parental unfitness must be supported by clear and convincing evidence, and the subsidiary findings upon which such unfitness determination is based must be "proved by a fair preponderance of the evidence."[5] Adoption of Helen, 429 Mass. 856, 859 (1999). The judge must not only find that the parent is currently unfit, but must also find that the current parental unfitness is not a temporary condition. See Adoption of Jacques, 82 Mass. App. Ct. 601, 610 (2012). The determination of parental unfitness is not focused on whether the parent is a good one, but rather "whether the parent is so bad as to place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child." Adoption of Leland, 65 Mass. App. Ct. 580, 584 (2006), quoting from Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998). "Parental unfitness means . . . more than ineptitude, handicap, character flaw, conviction of a crime, unusual life style or inability to do as good a job as the child's foster parent. . . . '[P]arental unfitness' means 'grievous shortcomings or handicaps' that put the child's welfare much at hazard." Adoption of Leland, supra, quoting from Adoption of

---

[5] A judge's subsidiary findings will not be disturbed on appeal unless clearly erroneous. See Custody of Eleanor, 414 Mass. 795, 799 (1993); Adoption of Elena, 446 Mass. 24, 30-31 (2006). The unfitness determination is reviewed for clear and convincing evidence. Custody of Eleanor, supra at 800.

Katharine, 42 Mass. App. Ct. 25, 28 (1997).  A judge, however, need not wait for disaster to happen but may rely upon past patterns of parental neglect or misconduct in determining current or future fitness.  See Custody of a Minor (No. 1), 377 Mass. 876, 882-883 (1979); Care & Protection of Stephen, 401 Mass. 144, 152 (1987); Adoption of George, 27 Mass. App. Ct. 265, 268 (1989); Adoption of Jenna, 33 Mass. App. Ct. 739, 744 (1992).

Next, in this bifurcated analysis, if a judge finds that the parent is currently unfit and that such unfitness is not a temporary condition, termination of parental rights requires the additional finding that such termination is in the child's best interests.[6]  "After ascertaining unfitness, the judge must determine whether the parent's unfitness is such that would it be in the child's best interests to end all legal relations between the parent and child."  Adoption of Nancy, 443 Mass. 512, 515 (2005).  In making that determination, "the court shall consider the ability, capacity, fitness and readiness of the child's parents . . . to assume parental responsibility," as

---

[6] Upon a finding of unfitness, the child may be committed to the custody of the department and the parent may retain all other noncustodial parental rights.  See Adoption of Carlos, 413 Mass. 339, 350 (1992).  Termination of parental rights may or may not be in the child's best interests.  See id. at 350-351.

well as the plan proposed by the department.  G. L. c. 210,
§ 3(c), as amended by St. 1999, c. 3, § 17.

"A judge, when deciding whether to dispense with consent to
adoption [i.e., termination of parental rights], must focus on
the present circumstances of the parent and the child, taking
into account recent positive gains (if any), and, in appropriate
cases, the likelihood of future improvement, in a parent's
ability to care for the child.  Predictions must be supported by
credible evidence, meaning they must be more than hypothetical.
A judge may not decline to dispense with consent based on a
faint hope that the family will succeed if reunited.  Evidence
of future fitness must be more substantial in proceedings to
dispense with consent to adoption than in a care and protection
case.  An estimate about the future rests on a more solid basis
for justifying a temporary remedy ([such as] keeping the child
under care and protection) than for an irrevocable one such as
dispensing with consent to adoption" (emphasis supplied).
Adoption of Inez, 428 Mass. 717, 723 (1999) (quotations and
citation omitted).  "In determining whether that extreme step
[of terminating parental rights] should be taken, consideration
of the future is a necessity."  Adoption of Carlos, 413 Mass.
339, 350 (1992).  See Adoption of Jacques, 82 Mass. App. Ct. at
610.  "Consideration of future fitness, however, should never be

made at the expense of the child, whose interest is paramount."
Adoption of Inez, supra.

Here, the mother argues that the judge erroneously determined her to be unfit and subsequently terminated her parental rights based upon her homelessness and her inability to gain employment, and that the judge should not have considered her frequent change of housing because such ensuing instability did not occur while she was living with Virgil. While homelessness, poverty, and financial instability alone are not sufficient to terminate a person's parental rights, they are proper considerations in an unfitness determination. See Care & Protection of Three Minors, 392 Mass. 704, 713 & n.12 (1984); Petitions of the Dept. of Soc. Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 289 (1987) (failure to maintain stable living arrangement or to maintain financial stability are proper considerations in unfitness determination). Moreover, contrary to the mother's argument, it is proper for a judge to consider a parent's living arrangements at the time of trial despite the fact that the child was not living with her at that time. Furthermore, in addition to the mother's housing and financial struggles, the judge also thoroughly considered the mother's ongoing substance abuse issues, her emotional and mental instability, her inability to attend to Virgil's hygiene (which affected his health and well-being), her past patterns of

parental neglect and misconduct, her failure to engage in remedial services, and her criminal activity. The record reveals that the judge gave close and careful consideration to all the evidence presented before making his findings, none of which we find to be clearly erroneous.

2. Drug abuse treatment records. Relying on 42 U.S.C. § 290dd-2 (2012),[7] the mother next argues that the judge improperly admitted and relied upon inadmissible evidence contained in her drug abuse treatment records. We disagree.

The general purpose of 42 U.S.C. § 290dd-2 is to protect the confidentiality of drug abuse treatment records. See Whyte v. Connecticut Mut. Life Ins. Co., 818 F.2d 1005, 1010 (1st Cir. 1987). However, both the statute and the applicable regulations recognize situations in which release is necessary.[8] Such a

---

[7] Title 42 U.S.C. § 290dd-2(a) provides that certain substance abuse treatment records are "confidential and [can] be disclosed only for the purposes and under the circumstances expressly authorized." A disclosure is permitted "[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor . . . . In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. . . ." 42 U.S.C. 290dd-2(b).

[8] Title 42 C.F.R. § 2.63 (1987) provides in relevant part:

"(a) A court order under these regulations may authorize the disclosure of confidential communications made by a patient to a . . . program in the course of diagnosis, treatment, or referral for treatment only if:

situation exists "[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor." 42 U.S.C. § 290dd-2(b)(2)(C). Good cause exists only if: "(1) [o]ther ways of obtaining the information are not available or would not be effective; and (2) [t]he public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services." 42 C.F.R. § 2.64(d) (1987).

The mother does not appear to be challenging whether there was good cause to disclose her drug abuse treatment records. While we have not yet explicitly held that disclosure of a parent's drug abuse treatment records in a care and protection case meets the requirement of "good cause," we have long held that "where a child's well-being is placed in issue, 'it is not the rights of the parents that are chiefly to be considered. The first and paramount duty is to consult the welfare of the

---

"(1) The disclosure is necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties;

(2) The disclosure is necessary in connection with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury, including homicide, rape, kidnapping, armed robbery, assault with a deadly weapon, or child abuse and neglect." (Emphases added.)

child.'" <u>Custody of a Minor</u>, 375 Mass. 733, 749 (1978), quoting from <u>Purinton</u> v. <u>Jamrock</u>, 195 Mass. 187, 199 (1907). The United States Supreme Court has addressed this issue and concluded that "[t]he dependent child's needs are paramount, and only with hesitancy would we relegate those needs, in the scale of comparative values, to a position secondary to what the mother claims as her rights." <u>Wyman</u> v. <u>James</u>, 400 U.S. 309, 318 (1971). Other jurisdictions have specifically addressed this question.[9]

We see no reason not to extend such logic to the disclosure of a parent's drug treatment records in a care and protection case. A child's interests in these proceedings outweigh any potential injury that the parent might face from disclosure of

---

[9] See <u>Doe</u> v. <u>Daviess County Div. of Children & Family Servs.</u>, 669 N.E.2d 192, 195 (Ind. Ct. App. 1996) ("In child neglect proceedings, the mother's right to the nondisclosure of the records relating to her alcoholism, as well as testimony of her counselor, must give way before the duty of the court to prevent harm and to safeguard the physical, mental, and emotional well-being of the child"); <u>Matter of Baby X</u>, 97 Mich. App. 111, 120 (1980) ("[I]n neglect proceedings confidentiality must give way to the best interests of the child. Where treatment records are found to be 'necessary and material' . . . to the state's proof of neglect, a court of competent jurisdiction may authorize disclosure"); <u>Matter of Doe Children</u>, 93 Misc. 2d 479, 481 (N.Y. Fam. Ct. 1978) ("[T]he interest of these young children in living in secure surroundings outweighs any possible injury to the patient, or to the physician-patient relationship"); <u>Matter of Maximo M.</u>, 186 Misc. 2d 266, 269 (N.Y. Fam. Ct. 2000) ("Good cause for disclosure has been found under the Federal statutory standards in the context of a child protective proceeding"). See also <u>In re Marvin M.</u>, 48 Conn. App. 563, 568-570 (1998).

his or her drug treatment records.  Any interest a parent may have in the confidentiality of treatment records must give way to the interests of a child in being protected from physical, mental, or emotional harm, as well as the interests of the Commonwealth, as parens patriae, in protecting the child's welfare.  Here, because of the mother's significant history of drug abuse, her participation, or lack thereof, in her various treatment programs was highly relevant to the judge's determination of her current and future fitness as well as the child's best interests. See Adoption of Lisette, 93 Mass. App. Ct.   ,     (2018).

In addition to a showing of good cause, 42 C.F.R. § 2.64(e) (1987) requires that an order of disclosure limit the "disclosure to those parts of the patient's record which are essential to fulfill the objective of the order."  Here, the judge stated in his orders allowing the department's motions that "[t]he safety and best interests of the child in this matter constitutes good cause, within the meaning of 42 U.S.C. § 290dd-2(b)(2)(C) to order disclosure of these records" and that the "records are subject to limited confidentiality under G. L. c. 111E, § 18 and 42 U.S.C. § 290dd et seq."  We see no error.

Finally, the mother argues that she did not receive adequate notice to respond to the department's motions seeking

disclosure of her drug abuse treatment records, as required by 42 C.F.R. § 2.64 (1987), because the department's motions were filed and allowed on the same day.[10]  We disagree.  While it would have been better practice to have given her more advance notice and opportunity to be heard, under the circumstances of this case she was not prejudiced.  The mother was present in open court at the time the department filed the motions.  She had ample time to file appropriate motions, including a request for an in-camera hearing before the records were disclosed.[11]

---

[10] Title 42 C.F.R. § 2.64 provides, in pertinent part:

"(b) Notice.  The patient and the person holding the records from whom disclosure is sought must be provided:

"(1) Adequate notice in a manner which does not disclose patient identifying information to other persons; and

"(2) An opportunity to file a written response to the application, or to appear in person, for the limited purpose of providing evidence on the statutory and regulatory criteria for the issuance of the court order as described in § 2.64(d).

"(c) Review of evidence:  Conduct of hearing.  Any oral argument, review of evidence, or hearing on the application must be held in the judge's chambers or in some manner which ensures that patient identifying information is not disclosed to anyone other than a party to the proceeding, the patient, or the person holding the record, unless the patient requests an open hearing in a manner which meets the written consent requirements of the regulations in this part.  The proceeding may include an examination by the judge of the patient records referred to in the application."

[11] The department's motion seeking disclosure of Habit Opco's records was filed on December 4, 2015.  The judge allowed

She failed to make any such request and later waived any possible objection by testifying about the contents of the records at trial.[12]  We would be hard pressed to conclude that, under these circumstances, the mother was not provided with adequate notice and an opportunity to be heard.

3.  Posttermination and postadoption visitation.  The mother also argues that the judge erred in declining to order posttermination and postadoption visitation between the mother and Virgil.  "The decision whether to grant posttermination visitation is within the judge's sound discretion."  Adoption of Cecily, 83 Mass. App. Ct. 719, 727-728 (2013).  However, such discretion is not unfettered; posttermination visitation "must

---

the department's motion that same day.  The subpoena for these records did not issue until February 11, 2016.  The records were admitted in evidence on March 30, 2016, three months after the department filed its motion.  The department's motion seeking disclosure of Women's View's records was filed on March 30, 2016.  The judge allowed the department's motion that same day, and the subpoena issued on April 1, 2016.  The records were admitted in evidence on April 28, 2016, almost one month after the department filed its motion.

We note that "[a court] order does not compel disclosure. A subpoena or a similar legal mandate must be issued in order to compel disclosure.  This mandate may be entered at the same time as and accompany an authorizing court order entered under the regulations in this part."  42 C.F.R. § 2.61(a) (1987).

[12] Disclosure of treatment records is authorized if "[t]he disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications."  42 C.F.R. § 2.63(a)(3).

be grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent, not in the rights of the biological parent [or] the legal consequences of their natural relation." Adoption of Terrence, 57 Mass. App. Ct. 832, 839 (2003), quoting from Adoption of Vito, 431 Mass. 550, 562 (2000). Although a psychologist recommended that supervised visits should continue if the mother can "maintain her emotional stability," the judge found that an order of visitation was not in Virgil's best interests. The judge based his decision on the mother's failure to maintain consistent visits with Virgil, her inability to address her ongoing mental instability and drug addiction, and her inability to obtain stable housing. The judge also took into consideration how the mother's instability has affected Virgil's emotional well-being. The record shows that the judge carefully considered the best interests of Virgil in declining to order posttermination and postadoption visitation. The judge did not abuse his discretion.

Decree affirmed.