After a six-day trial, a Juvenile Court judge found the mother unfit to parent her children, Neville and Amy, terminated her parental rights, and approved the adoption plans of the Department of Children and Families (department). See G. L. c. 210, § 3. The mother appeals, claiming that the judge erred in concluding that it was in the children's best interests to terminate her parental rights, and that the department's adoption plan for Amy was insufficiently developed. We affirm.
1. The mother's unfitness. On July 14, 2015, the department filed a care and protection petition on behalf of Neville, born in 2012, and Amy, born in 2014.[3] Prior to that, between 2014 and 2015, numerous reports of abuse and neglect of the children were filed pursuant to G. L. c. 119, § 51A. In 2015, the mother was unable to obtain safe and appropriate housing. She and her children stayed for short periods with various friends and family members. The department took custody of the children when the mother left Neville with a friend around midnight and asked that her friend drop Neville off at a sober house where Neville's uncle was staying. Since then, the mother has been unable to make progress that would support a goal of reunification.
The mother contends that it was premature to terminate her parental rights because, given more time, she could have made progress toward demonstrating parental fitness. "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). The judge "must also find that the current parental unfitness is not a temporary condition." Adoption of Virgil, 93 Mass. App. Ct. 298, 301 (2018). As it is within the purview of the judge to weigh the evidence, assess the credibility of witnesses, and, accordingly, make findings of fact, the judge's subsidiary findings will remain undisturbed unless shown to be clearly erroneous. See Adoption of Jacques, supra at 606-607. Here, there was an abundance of evidence that supported the judge's conclusion that the mother was unfit to parent both children and that the unfitness was not temporary.[4] Adoption of Carlos, 413 Mass. 339, 350 (1992) (judges should not limit inquiry to parental fitness at time of trial).
a. Substance use. The judge's findings demonstrate a link between the mother's substance use, her inability to maintain and complete treatment, and the consequent harm to her children. "Evidence of alcohol or drug abuse is ... relevant to a parent's willingness, competence, and availability to provide care." Adoption of Anton, 72 Mass. App. Ct. 667, 676 (2008). Although the mother participated in several treatment programs, she has not completed any of them. To the contrary, she has a history of being discharged from treatment programs due to noncompliance. The mother abused her prescribed medications and purchased drugs illegally. Indeed, Amy tested positive for Subutex when she was born.[5] The mother has been unable to maintain sobriety and failed to provide proof of recent sobriety despite her participation in substance abuse treatment programs. The judge's conclusion that the mother continues to be involved with drugs, and that her unfitness is likely to continue to a near certitude is amply supported by the record. " '[A] condition which is reasonably likely to continue for a prolonged indeterminate period, such as alcohol or drug addiction ... [that] makes the parent ... unlikely to provide minimally acceptable care of the child' is not a temporary condition." Adoption of Elena, 446 Mass. 24, 31 (2006), quoting G. L. c. 210, § 3 (c ) (xii).
b. Unstable housing. The mother's frequent moves and inability to provide a safe environment for the children contribute to her unfitness. It is proper for a judge to consider a parent's "inability to secure 'adequate stable housing' " in determining fitness. Adoption of Anton, 72 Mass. App. Ct. at 676, quoting Adoption of Vito, 431 Mass. 550, 555 (2000). Further, a parent's pattern of frequently moving with the child is an appropriate factor to consider in assessing parental fitness. See Care & Protection of Lillith, 61 Mass. App. Ct. 132, 136 (2004). Here, the mother moved with the children many times between 2013 and 2015. She abandoned her shelter placement and subsequently stayed with friends and family members for short periods of time. At trial, the mother still did not have permanent housing accommodations, and she offered no stable housing options for her children.
c. Failure to utilize services. The record supports the judge's findings that the mother's lack of progress in utilizing services contributed toward her parental unfitness. "Evidence of parents' refusal to cooperate with the department, including failure to maintain service plans and refusal of counseling programs, is relevant to the determination of unfitness." Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005). The department's service plan with the mother included, inter alia, engaging in an in-patient dual-diagnosis treatment program, engaging in trauma-focused therapy, obtaining housing, engaging in substance use treatment, and signing releases for the department to verify her treatment and progress. The mother participated in some of these services, but she did not participate in many of them, and overall was inconsistent in her commitment to completing her service plan tasks. Moreover, she was unable to demonstrate that she actually benefited from the services in which she did engage. The judge properly found that the mother continued to lack insight into the critical issues before her, and that her unfitness will remain indefinitely and will prohibit her from meeting the basic needs of her children.
d. Criminal history. The mother has a criminal history dating back to 2008 and continuing through the time of trial. Charges include shoplifting, larceny, receiving stolen property, possession of controlled substances, and reckless operation of a motor vehicle.[6] The judge properly considered the mother's criminal history in concluding she was unfit to parent. See Care & Protection of Quinn, 54 Mass. App. Ct. 117, 125 (2002) (consideration of parent's criminal history is "germane" to extent it sheds light on parental fitness). In addition, the maternal grandmother secured a G. L. c. 209A abuse prevention order against the mother in 2016.
e. Inconsistent visitations. Indifference toward a child may constitute unfitness. See Guardianship of a Minor, 1 Mass. App. Ct. 392, 396 (1973). Although the mother attended many visits with both children, she missed multiple visits, and there was a period in 2016 exceeding six months where she neither visited her children nor maintained contact with the department. In 2015, the mother visited Neville in the company of her friends, who were under the influence of drugs. A parent's failure to visit with children is relevant to the fitness determination. Adoption of Darla, 56 Mass. App. Ct. 519, 522 (2002). The judge credited the mother for her attendance at some supervised visits but properly considered the numerous others that she missed.
2. Adoption plan. The mother contends that it was error to approve the department's plan for adoption through recruitment for Amy.[7] A placement determination is reviewed for an abuse of discretion. Adoption of Hugo, 428 Mass. 219, 225-226 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999). An adoption plan need not be fully developed. See G. L. c. 210, § 3. See also Adoption of Stuart, 39 Mass. App. Ct. 380, 393 (1995). Indeed, "[a] fully developed adoption plan, while preferable, is not an essential element of proof in a petition brought by the department under G. L. c. 210, § 3." Adoption of Paula, 420 Mass. 716, 722 n.7 (1995). Here, the judge considered the entirety of the evidence, as well as Amy's health and safety.[8] The plan had enough "content and substance ... to permit the court meaningfully to evaluate and consider ... what [the department] proposes." Adoption of Stuart, supra. There was no error.
Decrees affirmed.

The children have different fathers. Neville's father has died. Amy's father's parental rights were terminated, and he did not appeal from that decision.

The mother does not challenge any of the judge's findings of fact as clearly erroneous.

The mother was properly prescribed this medication.

Some of these charges were dismissed.

The mother concedes that the adoption plan for Neville is in his best interests.

Amy has been in foster care since she was seven months old. She is medically up to date and developmentally on target. She has no special needs.