NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-653

ADOPTION OF KENEISHA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a trial, a judge of the Juvenile Court found the mother unfit to parent her daughter, Keneisha,[1] and entered a decree terminating her parental rights to the child.[2] In this appeal, the mother challenges the judge's determination of her unfitness as well as the termination of her parental rights. We affirm.

Background. The Department of Children and Families (department) initiated the underlying care and protection proceedings, the second such action relating to the child, in November 2021.[3] In response to a report of neglect under G. L.

___

[1] A pseudonym.

[2] Prior to trial, the father stipulated to a finding of unfitness and to the termination of his parental rights to Keneisha. He is not a party to this appeal.

[3] The first action had been dismissed in 2020 after the department placed the child with the father.

c. 119, § 51A, and the father's report about an interaction with the mother at his home, the department assumed custody of Keneisha and established a kinship placement for her where she remained at the time of trial. It is undisputed that Keneisha has extensive medical, developmental, and behavioral needs. The department's goal changed in July 2022 from reunification to permanency through guardianship with Keneisha's kinship resource, to which the mother agreed. By October 2022, however, the department's goal had become adoption. The mother did not agree to this plan, and the case went to trial approximately one month later, in November 2022.

Discussion. "To terminate parental rights to a child, the judge must find, by clear and convincing evidence, that the parent is unfit and that the child's 'best interests will be served by terminating the legal relation between parent and child.'" Adoption of Luc, 484 Mass. 139, 144 (2020), quoting Adoption of Ilona, 459 Mass. 53, 59 (2011). "While a decision of unfitness must be supported by clear and convincing evidence, a judge's findings will be disturbed only if they are clearly erroneous" (citation omitted). Adoption of Paula, 420 Mass. 716, 729 (1995). "Moreover, the judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference." Custody of Eleanor, 414 Mass. 795, 799 (1993). Whether termination of parental rights is in a child's

2

best interests is a discretionary decision.  See <u>Adoption of</u>

<u>Hugo</u>, 428 Mass. 219, 225 (1998), cert. denied, 526 U.S. 1034

(1999).

1.  <u>Mother's failure to benefit from services</u>.  We discern

no abuse of discretion in the judge's determination that despite

the mother's willingness to participate in many of the services

available to her to improve her parenting skills, her failure to

benefit from those services left her unfit to parent Keneisha.[4]

The judge noted that the mother had taken many parenting

courses, been open to help from a parent support worker, and

engaged in individual therapy.[5]  Despite the mother's

participation in these services, however, the judge found that

_____

[4] Nor do we agree with the mother's contentions, each of which is unsupported by any citation to the record, that the judge improperly relied on the "feelings" of the department's ongoing social worker "that Mother had not benefited from services."

[5] The judge did not, however, find that the that mother had made efforts to meet all parts of her action plan.  In particular, the judge found that the mother had not completed an anger management program.  While the mother testified that her failure to satisfy that action plan requirement was the result of her being repeatedly waitlisted for suitable programs, the judge did not credit that testimony.  Additionally, the mother dismissed domestic violence services as unnecessary "because she could recognize the warning signs on her own."  These findings were relevant to the judge's determination of the mother's parental fitness.  See <u>Adoption of Yvonne</u>, 99 Mass. App. Ct. 574, 577-578 (2021), quoting <u>Adoption of Jacob</u>, 99 Mass. App. Ct. 258, 262 (2021) ("Because '[d]omestic violence may imperil a child's physical safety and psychological development . . . evidence of domestic violence is relevant to a judge's determination of parental fitness'").

3

the mother had not gained the necessary insights into Keneisha's needs to provide minimally-adequate parenting for her. For example, the judge found that notwithstanding the mother's completion of "an impressive number of parenting classes," as of the time of trial, she remained unable to adapt her parenting approach, and particularly her rigid disciplinary style, to Keneisha's complex developmental and behavioral needs. See Adoption of Mary, 414 Mass. 705, 711 (1993) (judge must consider "a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age"). The judge found that although the mother maintained an apartment, the apartment's clutter made it inaccessible and the conditions within were unsanitary. See Care & Protection of Vick, 89 Mass. App. Ct. 704, 706 (2016) (cleanliness of parent's home appropriate factor for consideration in determination of parent's fitness). The judge heard evidence that despite a history of domestic abuse and anger management concerns, the mother failed to avail herself of relevant services offered by the department and continued to engage in inappropriate and violent behavior to others -- including her mother, a former partner, Keneisha's preadoptive parents, department workers, and Keneisha herself -- up until the time of trial. See Adoption of Ulrich, 94 Mass. App. Ct. 668, 676 (2019) (mother's difficulty "managing her

4

anger" relevant to fitness).  Finally, the judge found that the mother experienced ongoing mental health instability that briefly affected her ability to be present for Keneisha.[6]  See Adoption of Serge, 52 Mass. App. Ct. 1, 8 (2001) ("Physical unavailability of the parent to provide day to day care for the child . . . [is] relevant evidence of unfitness").

2.  Mother's current and future unfitness.  After trial, the judge prepared "specific and detailed findings" supporting her conclusion that the mother was unfit to parent Keneisha and that her unfitness was not temporary.  Adoption of Quentin, 424 Mass. 882, 888 (1997).  See Adoption of Virgil, 93 Mass. App. Ct. 298, 301 (2018) (judge must "find that the current parental unfitness is not a temporary condition").  Those findings include, as we have discussed, that the mother availed herself of services but failed to benefit from them, as demonstrated by her ongoing inability to manage her anger, provide a sanitary home for Keneisha, or suit her parenting and disciplinary approaches to Keneisha's particular and complex needs.  We think that considered in their entirety, those findings and conclusions established by clear and convincing evidence that

_____

[6] To the extent that the mother challenges any of these findings as clearly erroneous, she fails in her brief to identify them in any detail.

5

the mother was unfit at the time of trial to parent Keneisha and that the mother's unfitness was not temporary.

The mother's final challenges to the judge's concerns about her ongoing inability to provide appropriate housing for Keneisha and continuing involvement with issues of domestic violence do not change our view.  As to housing, the mother contends, and we infer that the judge found, that the mother had lived in the same apartment for approximately six years before trial.  This finding is not, as the mother suggests, in tension with the judge's additional finding that at the time of trial the apartment was unsanitary or with the finding that the mother was on the verge of being evicted.  Although we might have chosen different words to summarize the point made in conclusion of law 12[7] -- stating instead that the mother had a history of housing instability and, after a period of relative stability, was at the time of trial again planning a move that would distance her from her "support network" -- the judge's findings are not clearly erroneous and do not conflict with the conclusions she drew from them.  Even if we were to conclude otherwise, we would not be persuaded that such a conflict would

---

[7] "Mother has a penchant for moving to a new area to improve her access to housing and services.  This pattern has not been effective, nor would it be beneficial to the child's need for stability in light of her deficits."

6

be fatal to the judge's conclusion that the mother was unfit and likely to remain so.  This is because the judge's conclusion rested not solely on the mother's past inability to maintain an apartment for the child, but on her current and continuing inability to maintain an appropriate -- that is, safe and sanitary -- place for Keneisha to live.[8]

The judge's concerns about the mother's ongoing involvement with domestic violence and her inability to manage her anger are well-supported by the record.  The mother's focus on the evidence of her break with one abusive former partner as proof that she had gained insight into "her prior poor choices" is too narrow; it excludes other evidence that the judge could and did credit about the mother's ongoing violence toward other close contacts.  The judge properly considered not only the mother's history as a victim of domestic violence, see Adoption of Carla, 416 Mass. 510, 517 (1993) ("prior history does have prognostic value" in assessing parental fitness), but also recent episodes in which the mother was the aggressor in incidents involving both a recent partner and her own mother.[9]  See Adoption of

_____

[8] The mother does not challenge as erroneous the judge's findings about the conditions of the apartment, including the presence of standing water in a bathtub, the presence of dirt soaked with bleach, and the existence of noxious odors.

[9] The judge also found that the mother had slapped the child once when the child was a toddler.

Xarissa, 99 Mass. App. Ct. 610, 618-619 (2021) (parent's experience as both victim and perpetrator of domestic violence relevant to judge's assessment of parental fitness). To the extent the mother argues on appeal that the department failed to make reasonable efforts to address the impact of domestic violence in the lives of the mother and Keneisha, she did not raise those issues before the trial judge, and they are therefore waived. See Adoption of West, 97 Mass. App. Ct. 238, 242 (2020).

Decree affirmed.

By the Court (Meade, Neyman & Hand, JJ.[10]),

Assistant Clerk

Entered: April 19, 2024.

---

[10] The panelists are listed in order of seniority.