NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-108

ADOPTION OF WYATT (and two companion cases[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father appeals from decrees entered by a judge of the Juvenile Court terminating his parental rights to his three children. He argues that there was insufficient evidence to support the judge's determinations that (1) his unfitness was likely to continue indefinitely and (2) that it was in the children's best interests to terminate his parental rights. We affirm.

Background. We summarize the judge's findings of fact, supplemented with uncontroverted evidence from the record, reserving certain details for later discussion. The Department of Children and Families (department) has been involved with the family since November 2010, when the oldest child was born

---

[1] Adoption of Elena and Adoption of Amanda. The children's names are pseudonyms.

substance exposed.  The oldest child, age twelve at the time of

the trial, was first removed from the father's custody in 2011,

when he was almost one year old, after the father went into

Boston and left him overnight without a caretaker at Sage House,

a residential family treatment program where they were living.[2]

When the father returned the next day, he admitted to using

cocaine and marijuana and subsequently tested positive for

cocaine, heroin, and marijuana.[3]  The department obtained

temporary custody of the oldest child, but he was soon reunified

with the father.

All three children were removed in 2019 after the father

overdosed on heroin outside the family's apartment -- his second

overdose in a six month period -- and had to be revived with

Narcan.  The children, then ages eight, six, and two, were in

the home at the time.  The department filed a second care and

protection petition, and the children were placed in the

department's temporary custody.  The father, with the

department's assistance, enrolled in an in-patient substance

---

[2] The mother was living in another shelter at the time, having recently been released from incarceration.  In 2016, she died of an overdose in the family home.  The children and the father were present in the home when the mother overdosed.

[3] The judge did not credit the father's testimony at trial that he had not used drugs the night he left the oldest child at Sage House or that his drug screens were negative during that time.

abuse treatment program through the Institute of Health and Recovery. Following his in-patient treatment, the father moved back to Sage House in February 2020, where he was again reunified with the children. There, the father attended group meetings, worked with clinicians to address his substance abuse, and was prescribed suboxone to help him withdraw from opioids.

In the Spring of 2020, the father graduated from Sage House after successfully completing the program requirements; he and the children moved to an apartment. The father received substance abuse and mental health treatment services from New Horizons, an addiction and mental health clinic.[4] Although he met with a counselor and a behavioral health worker, and continued to receive medication to aid his withdrawal from substances, he did not do well with the less structured environment New Horizons provided and the transition to remote treatment during the Covid-19 pandemic, and was terminated from the program in October 2020 due to non-compliance.

A month after his termination from New Horizons, in November 2020, the father informed the department that he was

---

[4] The father had been diagnosed with bi-polar disorder and post traumatic stress disorder in 2001 and was prescribed Prozac, Lithium, and Trazadone. He stopped taking the Trazadone around 2012, and stopped taking the Prozac and Lithium in 2021. At trial, the father testified that he discontinued his medication because he felt that he no longer needed it, and that he had given up after the March 2021 removal of the children.

feeling very depressed, sleeping all day, using marijuana, and needed an intensive outpatient treatment program. The department referred the father to a virtual partial day program at a local hospital. The father enrolled in the program in February 2021 but continued to struggle with substance use. The department encouraged him to engage in in-person treatment and offered to assist the father in accessing the in-person program at the local hospital.

The department filed the care and protection petition at issue in March 2021. Initially, the father maintained custody under this new petition, subject to a conditional custody agreement and a signed safety plan. Among other things, the safety plan required that the father abstain from drug use in the home and engage in a dual diagnosis treatment program. The department would conduct unannounced home visits to ensure that the father and the children were safe.

During one unannounced home visit just a few weeks thereafter, on March 26, 2021, the social worker found the father unresponsive, and the children without a safe and sober caretaker. The social worker called 911, and the police and EMTs responded to the home. The social worker observed clutter, dirt, and feces on the floor and furniture in the apartment. The responding police officers found used crack pipes under a pile of clothing in the oldest child's bedroom; marijuana, small

4

baggies, balled up tinfoil, cotton, and copper wire in a kitchen drawer; and a container for syringes in the kitchen. The children said that the father had been sick that day and the previous day. The oldest child stated that he did not want to tell the social worker things in order to protect the father. The children, ages ten, eight, and five at the time, were removed and placed in a foster home.

After the March 2021 removal of the children, the father enrolled in an in-patient detoxification program. He completed the program and was discharged in April 2021 with an after care plan that required him, among other things, to attend virtual sessions twice a week, and recommended that he enroll in an intensive out-patient program. He failed to complete his after care plan. Although he completed an intake with an intensive out-patient treatment program at the end of April 2021, he did not enroll in the program. The department thereafter recommended that the father enter an in-patient substance abuse treatment program, but he stated that he would only seek in-patient treatment if he could regain custody of the children. The father relapsed again in the fall of 2021, and testified at trial that he was using substances every weekend.

Discussion. 1. Standard of Review. A judge's decision to terminate parental rights must be supported by "clear and convincing evidence, based on subsidiary findings proved by at

5

least a fair preponderance of the evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Arianne, 104 Mass. App. Ct. 716, 720 (2024), quoting Adoption of Xarissa, 99 Mass. App. Ct. 610, 615 (2021). That decision must also be supported by a finding "that the current parental unfitness is not a temporary condition." Adoption of Virgil, 93 Mass. App. Ct. 298, 301 (2018). "We give substantial deference to the judge's decision to terminate parental rights 'and reverse only where the findings of fact are clearly erroneous or where there is clear error of law or abuse of discretion.'" Adoption of Arianne, supra at 720, quoting Adoption of Valentina, 97 Mass. App. Ct. 130, 137 (2020). Here, the record amply supports the judge's findings, and we discern no abuse of discretion or error of law in the judge's conclusion that the father's unfitness was not temporary, and that termination of his parental rights was in the children's best interest.

2. Unfitness. The father points to the two prior reunifications, and the lack of in-person services during the height of the COVID-19 pandemic, to support his claim that his unfitness was merely temporary. However, where the judge's findings and conclusions reflect careful attention to the evidence in view of the father's history and continuing use of substances, including that the father received additional in-

6

patient care after the children were removed and thereafter refused further recommended in-patient care, the judge was fully justified in finding that the father's unfitness was not temporary.[5]

We are unpersuaded by the father's argument that the court should have considered a "likelihood of genuine improvement in [the father's] situation . . . upon the resumption of services after pandemic restrictions were lifted."  The father completed an inpatient program in April of 2021, but could not maintain his sobriety even with enrollment in an intensive outpatient program.  When he failed to regularly participate in outpatient services, the department recommended additional inpatient treatment, but the father "gave up," relapsed, and still had not engaged in any services by the time of trial in August 2022. See Adoption of Nancy, 443 Mass. 512, 517 (2005) ("where the father has had ample opportunity to achieve fitness as a parent but has failed to follow through, it is only fair to the children to say, at some point, 'enough'").  Further, the judge properly considered the father's refusal to engage in recommended services to address his substance abuse unless he

_____

[5] The judge specifically found factor (xii), set forth in G. L. c. 210 § 3 (c), applicable to the father's unfitness determination: "a condition which is reasonably likely to continue for a prolonged, indeterminate period, such as . . . drug addiction. . . , and the condition makes the parent unlikely to provide minimally acceptable care of the child."

was first reunified with the children as indicative of his unwillingness to remedy his parental unfitness. See Adoption of Mario, 43 Mass. App. Ct. 767, 772 (1997) (parent's "continued refusal to participate in intensive, long-term drug treatment made it unlikely that she would address her problem in the near future or that her parenting abilities would improve, and placed [the children] at risk of further neglect if returned to her custody").

3. Termination of parental rights. We also do not accept the father's argument that in assessing whether the children's best interests will be served by termination of his parental rights, the judge inappropriately weighed the children's bond with their foster mother and failed to consider the children's bond with him. The judge was statutorily obligated to consider the children's bond with their substitute caregiver when determining whether the children's best interests will be served by terminating the father's parental rights. See G. L. c. 210, § 3(c). Further, the judge did not overlook the father's bond with the children. Indeed, it was in recognition of that bond that he ordered post-termination and post-adoption contact. But, overshadowing that bond, and any strengths the father possesses, is the fact that the father has significant and ongoing substance abuse and mental health issues that have put the children at risk and resulted in them being removed multiple

8

times -- yet the father had not acted in the year prior to trial to overcome those issues. See Adoption of Nicole, 40 Mass. App. Ct. 259, 262 (1996) (ultimate determination in care and protection cases does not rest solely on "the father's merits or demerits" but rather on "whether, in all the circumstances [including consideration of those merits or demerits] he has the capacity to act as a fit parent").

4. Remaining claims. The father argues several additional points.[6] First, he challenges as unsupported the judge's conclusion that he was "incapable [of] engaging in services and daily life activities which include general parenting requirements such as feeding and nurturing the children and making sure their basic needs are met." The department has been involved with the family for many years and it is true that intermittently, the father demonstrated to the department that he was able to meet the children's basic needs. But, by the

_____

[6] We decline to address in detail the father's claim that the judge's findings about the foster mother taking the children on vacation and placing them in private school "borders on improper comparison" of the incomes of the foster mother and the father, as those findings are supported by the record and the father points to nothing else to in the judge's analysis to support this claim. Indeed, the father's argument itself, using the terms "borders on," seems to concede that the judge did not make an improper comparison. We similarly decline to address the father's argument that the judge should have considered the fact that children of color are less likely than white children to be adopted as it does not appear that this information was introduced at trial, and a pre-adoptive resource has already been identified for the children.

9

time the children were removed in March of 2021, the father admitted that he was struggling with his mental health, sleeping all day, and using substances every weekend. This, coupled with the father's continued refusal to engage in treatment to address his mental health and substance abuse, adequately supports the judge's conclusion.

Next, the father contends that the judge erred in concluding that his "failure to visit with the children on a regular basis is indicative of an indifference to the children's feelings and/or an inability to be present for important occasions in the children's lives." Where the foster mother testified that father would attend only one visit per month when he was offered weekly visits, and the social worker testified that visits were reduced to biweekly due to Father's inconsistent attendance and the negative impact on the children when the father did not appear for scheduled visits, there was no error in the judge's conclusion that the father did not visit the children on a regular basis.

Finally, the father argues that the judge incorrectly concluded that he "still had a default warrant" at the time of trial, and improperly speculated that the default warrant was indicative of future involvement in the criminal justice system. The father misinterprets the judge's conclusion. The judge did not conclude that the default warrant was still outstanding,

rather, the judge wrote that "the [court] is concerned that a default warrant was in place as a result of Father's inability to resolve a criminal matter" (emphasis added).  The judge properly weighed the father's lengthy criminal history, including several periods of incarceration, as a factor bearing on parental fitness.  See Care & Protection of Frank, 409 Mass. 492, 495 (1991).

Accordingly, the decrees terminating the father's parental rights to all three children are affirmed.

Decrees affirmed.

By the Court (Vuono,
  Englander & Hodgens, JJ.[7]),

Clerk

Entered:  December 5, 2024.

---

[7] The panelists are listed in order of seniority.

11