NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1325

ADOPTION OF SERAPHINA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother appeals from a decree issued by a judge of the Juvenile Court finding her unfit and terminating her parental rights to her daughter, Seraphina.  We affirm.

Background.  Seraphina was born in November 2021.  She is the mother's fifth child.  The mother's parental rights have been terminated for each of her older four children.  The day after Serafina's birth, the Department of Children and Families (department) filed a petition alleging that Seraphina was in need of care and protection based on persistent, negative symptoms of the mother's mental health conditions and the mother's history of substance use and domestic abuse.  At a court hearing four days after Seraphina's removal, the mother waived her right to temporary custody.  Since her removal,

_____

[1] A pseudonym.

Seraphina has remained in the department's custody and lived with her maternal great aunt and two of her half-siblings, whom the great aunt has adopted. Seraphina enjoys a significant, positive bond with each of them. The great aunt also plans to adopt Seraphina. A trial on the department's petition and request to terminate parental rights was held on three nonconsecutive days beginning February 20, 2024.[2] The judge heard from four witnesses and considered twenty exhibits. The judge subsequently issued detailed findings supporting her conclusions that the department had met its burden of demonstrating by clear and convincing evidence that the mother was unfit to parent Seraphina and was likely to remain so, and that termination of the mother's parental rights was in Seraphina's best interests. See Adoption of Nancy, 443 Mass. 512, 515 (2005).

Discussion. To terminate parental rights to a child and to dispense with parental consent to adoption, "a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests" (citation omitted). Adoption of Oren, 96 Mass. App. Ct. 842, 844 (2020). "[T]he 'parental

_____

[2] The putative father established paternity in April 2022, but he died before the date of trial.

fitness' test and the 'best interests of the child test' are not mutually exclusive, but rather 'reflect different degrees of emphasis on the same factors.'" Adoption of Garret, 92 Mass. App. Ct. 664, 671 (2018), quoting Care & Protection of Three Minors, 392 Mass. 704, 714 (1984). "The judge must also find that the current parental unfitness is not a temporary condition" (quotation and citation omitted). Adoption of Arianne, 104 Mass. App. Ct. 716, 720 (2024). "We give substantial deference to the judge's decision to terminate parental rights and 'reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion'" (citation omitted). Id. "An abuse of discretion exists where the decision amounts to a clear error of judgment [in weighing the relevant factors, such] that [the decision] falls outside the range of reasonable alternatives" (citation omitted). Id.

1. Unfitness standard. The mother argues that the judge failed to conclude that the department proved she was unfit by clear and convincing evidence, and that the judge instead focused solely on whether termination of her parental rights was in Seraphina's best interests. In doing so, she contends, the judge implicitly lowered the department's burden. To support her argument, the mother points to a portion of paragraph four of the judge's rulings of law stating that the department

3

"established by clear and convincing evidence that returning [Seraphina] to [the mother's] care is contrary to [Seraphina's] best interest." However, within the same paragraph, the judge also found that "[t]here is clear and convincing evidence of [the mother's] parental unfitness." See Adoption of Oren, 96 Mass. App. Ct. at 844.

We disagree with the mother's contention that the judge's analysis was limited to the length of separation between the mother and Seraphina, the bond between Seraphina and her great aunt, and the ability of the great aunt to "be a better caretaker" for Seraphina. To the contrary, the judge reviewed each factor required to assess parental fitness in her detailed and comprehensive findings and rulings. See G. L. c. 210 § 3 (c). To the extent the judge infused some of her findings with discussion of Seraphina's best interests, we discern no error, where the judge examined each of the fourteen enumerated statutory factors and applied eight in support of termination being in Seraphina's best interests, before concluding that the department "met its burden by clear and convincing evidence of [proving the mother's] parental unfitness, and established such unfitness is not merely a temporary condition." See Adoption of Ilona, 459 Mass. 53, 59 (2011).

2. The mother's unfitness. The finding of the mother's unfitness resulted from the judge's proper consideration of a

"constellation of factors." Adoption of Greta, 431 Mass. 577, 588 (2000). The parent's fitness is "determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of Mary, 414 Mass. 705, 711 (1993). "The inquiry is whether the parent's deficiencies place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child" (quotation and citation omitted). Adoption of Olivette, 79 Mass. App. Ct. 141, 157 (2011).

a. Mental health conditions. The mother has been diagnosed with mental health conditions including substance use disorder. The judge found that manifestations of the mother's conditions persisted even though she cooperated to an extent with the department's service plans by taking medications and attending counseling, and that these manifestations negatively affected her ability to parent Seraphina. Notwithstanding the mother's efforts to address the symptoms of her mental health conditions, her participation in treatment was inconsistent, and she continued to struggle with anger management. About twice a month while the case was pending, the mother had outbursts of anger where she yelled, punched objects, and threw things. The mother also engaged in abuse of alcohol, cocaine, and opiates, beginning when she was seventeen years old. Although the judge

5

credited the mother's testimony that she had not abused substances since 2019, the mother overdosed on prescribed pills in 2021. The mother also continued to expose herself to drugs and alcohol by associating with substance users and permitting substance use in her home without appreciating the risks these exposures posed to her sobriety and to her child. On this evidence, we discern no error in the judge's determination that there was a nexus between the mother's mental health and substance use challenges and her inability to parent Seraphina. See Adoption of Luc, 484 Mass. 139, 146 & n.17 (2020) (mental health conditions and substance use can be factors in finding of parental unfitness where there is sufficient nexus between conditions and parent's ability to provide for child).

b. Domestic abuse. The mother experienced domestic abuse in multiple past intimate relationships. During her relationship with Seraphina's father, he inflicted mental, emotional, and physical abuse on the mother. In 2021, while she was pregnant with Seraphina, she sustained spinal fractures and a laceration to her head during an altercation with the father. Shortly thereafter, while still pregnant with Seraphina, the mother sprayed chemicals on the father and tried to light him on fire. Although the mother obtained a G. L. c. 209A restraining order against the father after these incidents, she later modified the conditions of the order to maintain contact with

the father.  Despite working with a domestic violence program where she received education and counselling for over a decade beginning in 2011, the mother remained unaware of the risks or warning signs of domestic abuse.  See Adoption of Ulrich, 94 Mass. App. Ct. 668, 677 (2019) (parent's failure to benefit from services "relevant to the determination of unfitness" [citation omitted]).  We thus discern no error in the judge's conclusion that the mother's history of domestic abuse, and particularly her lack of insight into its potential impact on Seraphina, contributed to the mother's unfitness.  See Care & Protection of Lillith, 61 Mass. App. Ct. 132, 139 (2004) (discussing harm to children of witnessing or being victim of domestic abuse).

c.  The mother's efforts to improve her parenting capacity.  To the extent that the mother contends that the judge failed to consider her efforts to work with the department to improve her parenting capacity, we are not persuaded.  The judge acknowledged the mother's efforts to improve her parenting capacity but found that the mother "has not been able to make lasting change in her judgement or behavior to be able to safely parent her child full time."  The mother engaged with many of the services on her action plans, but she did not provide her social worker with a safety plan for domestic abuse or complete a parental fitness and psychological evaluation.  Her apartment remained unsuitable for a child because of lead paint and

7

clutter. Starting in 2023, the mother became very inconsistent with visiting Seraphina and asked to reduce the length of the visits. She did not have a parenting plan for if she were granted custody of Seraphina, and she was reluctant to change her schedule to accommodate Seraphina's needs. We discern no error in the judge's conclusion that despite her efforts to improve her parenting capacity, the mother remained unfit to parent Seraphina. See Adoption of Lorna, 46 Mass. App. Ct. 134, 143 (1999) ("The judge was not obliged to believe that the parenting skills of the mother . . . had improved simply because of [her] recent cooperation with the department").

3. The mother's future unfitness. The mother briefly argues that the judge erred by failing to explain why the mother could not continue to improve her parental capacity. The judge addressed this issue with "specific and detailed findings" supporting her conclusion that the mother's unfitness was not temporary. Adoption of Quentin, 424 Mass. 882, 888 (1997). See Adoption of Virgil, 93 Mass. App. Ct. 298, 301 (2018) (judge must "find that the current parental unfitness is not a temporary condition"). Those findings include, as discussed, the persistent manifestations of the mother's mental health conditions and history of substance use, volatile behavior, and domestic abuse; as well as her lack of insight into how each of those could negatively impact Seraphina. Furthermore, the judge

8

found that the mother had failed to improve her parenting capacity substantially, even after her engagement with services recommended by the department.  Considered in their entirety, the judge's findings and conclusions established by clear and convincing evidence that the mother's unfitness was not temporary.

<u>Decree affirmed</u>.

By the Court (Henry, Hand & Brennan, JJ.[3]),

*Paul Little*

Clerk

Entered:  October 16, 2025.

---

[3] The panelists are listed in order of seniority.

9