CUSTODY OF ELEANOR & another.

No. 92-P-103.

Suffolk. May 14, 1992. - June 18, 1992.

Present: KASS, FINE, & LAURENCE, JJ.

Further appellate review granted, 413 Mass. 1104 (1992).

*Parent and Child*, Care and protection of minor. *Minor*, Care and protection. *Evidence*, Child custody proceeding, Sexual conduct.

In a proceeding to determine the need for care and protection of two children, the evidence was insufficient to support the judge's finding that the mother of the children was unfit to provide care and protection for the children because of her unwillingness to protect them from alleged sexual abuse by a former boyfriend to whom she was married at the time of trial. [670-671]

Although this court reversed a judgment that two children were permanently in need of care and protection, it ordered that the award of their custody to the Department of Social Services remain in effect temporarily, pending further order of the Juvenile Court after further proceedings consistent with this court's order. [671-672]

PETITION filed in the Boston Division of the Juvenile Court Department on January 22, 1990.

The case was heard by *Paul D. Lewis*, J.

*Joseph T. Buckley, Jr.*, for the mother.

*David B. Perry* for Department of Social Services.

FINE, J. The mother of Eleanor,[1] born February 11, 1981, and Carol, born March 26, 1985, appeals from the adjudication that both children were in need of care and protection pursuant to G. L. c. 119, § 24 (1988 ed.). Neither of the biological fathers is involved in the appeal. The judge found the mother unfit to provide care and protection for the children because of her unwillingness to protect them from sexual abuse by John Flanders, a former boyfriend to whom she was married at the time of trial. She contends that the find-

---

[1] All names used are fictitious.

ing of her unfitness was not supported by clear and convincing evidence.

In order to remove children permanently from a biological parent, the judge must find, by clear and convincing evidence, that the parent currently is unfit to further the welfare and the best interest of the children. See *Care and Protection of Martha*, 407 Mass. 319, 327 (1990), and cases cited. We proceed to examine the procedural history and evidence presented to the Juvenile Court judge so that we may determine whether the clear and convincing evidence test was met.

The family first came to the attention of the Department of Social Services (DSS) on April 11, 1988, through the filing, pursuant to G. L. c. 119, § 51A, of a report of suspected child abuse. The report, investigated and substantiated pursuant to G. L. c. 119, § 51B, was made shortly after Eleanor, then seven, was brought by a friend of her mother's to the South Boston Health Center where, while pointing to her vaginal area, she told a physician that Flanders, her mother's boyfriend, had touched her there. There were no physical signs of abuse. An evaluation of Eleanor done at the New England Medical Center Department of Child Psychiatry to determine whether she had been sexually abused was inconclusive. Nevertheless, a treatment plan in the report recommended psychotherapy for Eleanor and her mother and participation by her mother in a parents' group. The mother did not believe Eleanor's statement and informed the police that she did not want Flanders prosecuted, but she cooperated for some time in following the recommended treatment plan. On December 9, 1989, however, the mother and Flanders were married. On December 14, 1989, DSS initiated a new 51A report on the basis of Flanders' unsupervised access to both children, the mother's cessation of therapy for herself and Eleanor, and the mother's refusal to acknowledge that Eleanor had been sexually abused.

On January 22, 1990, DSS initiated the instant care and protection petition. After a hearing on the same date, DSS was awarded temporary custody of the children, and they

were placed in foster care. Flanders was ordered not to have contact with them.

At the hearing on permanent custody held in July of 1990, the judge heard the following additional evidence. Eleanor had recanted the statement that Flanders had touched her in her vaginal area. The mother continued to disbelieve Eleanor's original statement and, although the mother's relationship with Flanders was so unstable that she frequently told a DSS social worker that she would be seeking a divorce, she was living with him at the time of trial and was unwilling to state that she would deprive him of access to the children. Flanders suffered from some serious mental problems resulting in psychiatric hospitalizations, and he had been convicted of assaulting a child. According to the report of David B. Doolittle, a licensed psychologist, Flanders had a number of general characteristics associated with child sexual offenders. He had also expressed negative feelings about Eleanor. However, he was in therapy, and his therapist of many years stated that he did not believe that Flanders had committed the alleged sexual abuse of Eleanor. Regular visitation between the mother and the children was taking place, and their relationship was good.

We think that the evidence presented a slender, and therefore insufficient, basis for a finding of the mother's unfitness by clear and convincing evidence. If Flanders had sexually abused Eleanor, the mother's continued association with him and her failure to protect Eleanor from further abuse by him constituted conduct seriously detrimental to Eleanor. See *Adoption of Carlos*, 31 Mass. App. Ct. 233, 240-241, further appellate review granted, 411 Mass. 1103 (1991). It may also have warranted a finding that the home environment was potentially injurious to Carol. On the other hand, if no sexual abuse of Eleanor by Flanders had taken place, the mother's conduct, in particular her marriage to Flanders and her consequent incorporation of him within her household, was not so unreasonable from the point of view of the children as to amount to unfitness. Flanders' general instability may have caused other problems within the household re-

quiring the mother to act to protect the children, but that instability, apart from the alleged sexual abuse, was not the basis for the judge's action. The evidence that Eleanor had been sexually abused consisted of her out-of-court statement repeated upon questioning to a police officer, to the effect that on one occasion Flanders had touched her in the vaginal area. Compare the evidence of sexual abuse presented in *Care & Protection of Martha*, 407 Mass. at 321-322, and *Adoption of Carlos*, 31 Mass. App. Ct. at 235. Such an out-of-court statement is admissible for these purposes. See *Custody of Michel*, 28 Mass. App. Ct. 260, 265-266 (1990); *Custody of Tracy*, 31 Mass. App. Ct. 481, 485 (1991); G. L. c. 233 § 83. On the record as a whole, however, we think that the statement was accorded too much weight. The statement was nonspecific as to the nature and exact location of the touching and any of the attendant circumstances. There was no indication of any emotional trauma caused by the incident, and there were no physical signs of injury. A professional sexual abuse evaluation of Eleanor shortly after the alleged incident was inconclusive, and there was testimony that Eleanor never even mentioned the incident to her therapist. Her subsequent recantation may be unconvincing evidence that the incident did not happen, but it is certainly not probative of the fact that it *did* happen. Nor is the evidence that Flanders has some of the general characteristics found in many sexual abusers highly probative of what, if anything, he did to Eleanor.

Although we conclude that the award of permanent custody should be set aside, that conclusion is of little practical significance in light of information we received at oral argument concerning subsequent events. We were informed that the mother has permanently separated from Flanders and is awaiting an imminent court hearing on her complaint for divorce. As Flanders' presence in the home was the basis for the award of permanent custody to DSS, the need for such an order may no longer exist. The initial involvement by DSS with the family, however, was warranted, and there is reason for further concern on the part of DSS and the Juvenile

Court to assure: that the mother's current situation is such that she is willing and able adequately to care for Eleanor and Carol; that reintegration of the children into their mother's home takes place at a reasonable pace considering their emotional ties and their current situation in school; and that appropriate therapy and other services be ordered. The judge shall hold a hearing as soon as practicable to consider these and any other relevant issues.

Accordingly, the judgment that Eleanor and Carol are permanently in need of care and protection is reversed. The award of their custody to DSS shall remain in effect temporarily pending further order of the Juvenile Court after further proceedings consistent with this order.

*So ordered.*