CUSTODY OF ELEANOR & another.[1]

Suffolk. December 8, 1992. - April 9, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Parent and Child*, Care and protection of minor. *Minor*, Care and protection. *Evidence*, Child custody proceeding.

In a care and protection proceeding under G. L. c. 119, § 24, the evidence was insufficient to support the judge's ultimate finding that the mother of two children was unfit to provide care and protection for them where, although none of the judge's subsidiary findings was clearly erroneous, the evidence on which they were based did not provide clear and convincing proof of current parental unfitness. [799-801]

PETITION filed in the Boston Division of the Juvenile Court Department on January 22, 1990.

The case was heard by *Paul D. Lewis*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Joseph T. Buckley, Jr.*, for the mother.

*Kenneth J. King* for the minors.

*Alexander G. Gray, Jr.*, Special Assistant Attorney General, for Department of Social Services.

LYNCH, J. Here we are required to determine the proper standard of review for appellate courts in child custody cases. A judge in the Juvenile Court found two minor children, Eleanor and Carol, in need of care and protection and placed

---

[1] Her sister, whom we shall call Carol.

them in the permanent custody of the Department of Social Services (department). See G. L. c. 119, §§ 24 and 26 (1990 ed.). The Appeals Court reversed the judgment. *Custody of Eleanor*, 32 Mass. App. Ct. 668 (1992). We granted the department's application for further appellate review, and reverse the judgment of the Juvenile Court.

We summarize the relevant facts as found by the judge. On April 7, 1988, seven year old Eleanor was examined at the South Boston Health Center for a vaginal infection. During the examination, Eleanor's mother informed the attending physician that Eleanor had told her that the mother's boy friend, whom we shall call John Flanders, had "touched her down there." When questioned, Eleanor confirmed that Flanders had touched her vaginal area. Four days later, a report in accordance with G. L. c. 119, § 51A (1990 ed.) (51A report), was filed with the department alleging sexual abuse of Eleanor. Due to the nature of the allegations, Eleanor's three year old sister, Carol, was added to the investigation.

On April 18, 1988, the mother informed a Boston police sergeant that she did not want the district attorney's office to prosecute Flanders.[2] On April 20, 1988, the allegations of sexual abuse were supported along with allegations of emotional neglect of both children by their mother. Eleanor later recanted her allegation.[3]

On August 19, 1988, a second 51A report was filed alleging that the mother continued emotionally to neglect Eleanor and Carol by allowing them to remain alone and unsupervised with Flanders. Following these allegations, the mother and Eleanor participated in therapy at the South Boston Health Center and the mother was generally cooperative with the department. Her cooperation and participation in therapy ceased, however, on the release of Flanders from

---

[2] One of the judge's findings indicates that the mother so informed the sergeant on March 18, 1988. Another finding indicates the date to be April 18, 1988. See note 8, *infra*. The sergeant testified that the event occurred on April 18, 1988.

[3] The judge found that Eleanor's recantation lacked credibility. See note 8, *infra*.

Bridgewater State Hospital.[4] Within the next year, several 51A reports alleging emotional neglect of both children were filed with the department, but went unsupported.

On December 9, 1989, the mother and Flanders were married. The department then initiated another 51A report alleging that: Flanders now had access to Eleanor and Carol; the mother and Eleanor had stopped therapy; the mother refused to acknowledge that Eleanor had been sexually abused; and the mother had failed to complete tasks outlined in a service plan that she had signed on October 25, 1989.

On January 22, 1990, the department filed the instant care and protection petition on behalf of Eleanor and Carol pursuant to G. L. c. 119, §§ 24 and 26. After a full hearing, the judge granted temporary custody of Eleanor and Carol to the department, ordered that they be placed in foster care, required that their visits with their mother be supervised, and ordered Flanders to have no contact with either child. The department placed both children in separate South Boston foster homes. In February, 1990, however, Eleanor was removed from her foster home at the request of her foster mother. Because the department was unable to find alternative foster placement in South Boston, the department placed Eleanor with her aunt and uncle in New Hampshire.

The judge found that Flanders had a history of mental illness and instability that required repeated psychiatric admissions.[5] In addition, a sexual offender evaluation of Flanders conducted by Dr. David Doolittle found that Flanders demonstrated characteristics in his history and psychological

---

[4]Flanders was held at Bridgewater State Hospital for reasons unknown to the judge.

[5]Analyzing Flanders' psychiatric history, the judge found that Flanders had been sent to Metropolitan State Hospital at age ten for thirty days of observation for his involvement in setting a fire; was hospitalized at age twenty-four for three days in 1978 after he filed for divorce from his first wife, and was readmitted nine months later; was hospitalized fifty-three times at Shattuck Hospital since 1981 on short-term admissions; had been an outpatient at the D Street Clinic since 1982; had been taking psychoactive medication for five years; had lit himself on fire in 1981; had admitted to overdosing to gain admission to a hospital.

test findings associated with child sexual offenders.[6] Dr. Doo-
little concluded, "The circumstances to [Flanders'] emotional
adjustment as well as the characteristics outlined above·sug-
gest the need for considerable caution regarding his having
unsupervised access to children at the present time." He rec-
ommended that Flanders not be granted unsupervised access
to children residing in his home.

As of January, 1990, the mother had called a department
social worker four times and indicated that she would obtain
a divorce from Flanders. However, at the care and protection
proceeding on July 23, 1990, she had not obtained one and
she continued to live with Flanders. She also testified at the
proceeding that nothing would ever convince her that Elea-
nor was sexually abused, and that Flanders is not a danger to
her children.

The judge concluded that both Eleanor and Carol were in
need of care and protection pursuant to G. L. c 119, §§ 24
and 26, and permanently committed them to the care of the
department for placement in foster care. The Appeals Court
reversed, stating that "the evidence presented a slender, and
therefore insufficient, basis for a finding of the mother's un-
fitness."[7] *Custody of Eleanor, supra* at 670. We reach the

---

[6]The judge recited Dr. Doolittle's findings that Flanders showed a denial
of normal sexual activity and sexual interests in combination with indica-
tions of sexual preoccupation; there were indications of child-oriented im-
agery as well as hostility toward females; there was a combination of inter-
est and hostility toward children; Flanders had a very poor relationship
with his father, and was sexually abused as a child; Flanders had a history
of being accused as being a sexual offender by more than one victim
(charged with indecent assault and battery on a child in 1988); Flanders
had a history of sexual deviance in his extended family and showed signs
of social isolation in development.

[7]The Appeals Court, however, ordered that the children remain in the
custody of the department pending further proceedings of the Juvenile
Court regarding (1) the status of the mother's divorce from Flanders; (2)
the mother's current ability adequately to care for the children; (3) the
reintegration of the children into the mother's home to ensure that it takes
place at a reasonable pace considering their emotional ties and their cur-
rent situation in school; and (4) an order for appropriate therapy and other
services. See *Custody of Eleanor*, 32 Mass. App. Ct. 668, 671-672 (1992).

same result as the Appeals Court, but by slightly different reasoning.

The judge's findings in a custody proceeding must be specific and detailed so as to demonstrate that close attention has been given the evidence and such findings must prove current parental unfitness clearly and convincingly. *Care & Protection of Laura*, ante 788, 790 (1993). *Care & Protection of Martha*, 407 Mass. 319, 327 (1990). *Adoption of Frederick*, 405 Mass. 1, 4-5 (1989). *Custody of Two Minors*, 396 Mass. 610, 619 (1986). The findings, however, must be left undisturbed absent a showing that they are clearly erroneous. *Adoption of Kimberly*, ante 526, 529 (1993). *Care & Protection of Martha, supra. Care & Protection of Stephen*, 401 Mass. 144, 151 (1987). *Custody of Two Minors, supra* at 618, and cases cited. Moreover, the judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference. *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 397 Mass. 659, 670 (1986). *Custody of Two Minors, supra.*

None of the judge's findings in this case was clearly erroneous. A finding is clearly erroneous when there is no evidence to support it, or when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Building Inspector of Lancaster v. Sanderson*, 372 Mass. 157, 160 (1977), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). See *DiGiovanni v. Board of Appeals of Rockport*, 19 Mass. App. Ct. 339, 343 (1985). Here each finding was adequately supported in the record, including the judge's finding that Eleanor's recantation lacked credibility.[8] The judge reviewed the

---

[8]The judge found: "[A] recantation of sexual abuse is common in children where a primary care-taker denounces the allegation. Mother has repeatedly denounced [Eleanor's] allegation since April 18, 1988 when mother informed [a sergeant] of the Boston Police that she did not want to prosecute [Flanders]. Mother has repeatedly accused [Eleanor] of lying. Based on the above, this court finds that [Eleanor's] recantation lacks credibility."

documentary evidence and heard the witnesses testify.[9] He was in the best position to assess Eleanor's credibility, and the credibility of Eleanor's allegation. See, e.g., *Care & Protection of Martha, supra* at 328 ("judge's findings . . . were clear, articulate, amply supported by the record, and fully set forth what testimony the judge found to be credible"); *Care & Protection of Three Minors,* 392 Mass. 704, 711 (1984)("It is within the judge's discretion to evaluate the credibility of witnesses and to make his findings of fact accordingly. . . . He was not obliged to believe the mother's testimony or that of any other witness"). See also *Spiegel* v. *Beacon Participations, Inc.,* 297 Mass. 398, 407 (1937) ("the judge who has heard the testimony and seen the witnesses face to face has a better opportunity for determining the credibility of their conflicting statements than can possibly arise from reading a record"); *Springgate* v. *School Comm. of Mattapoisett,* 11 Mass. App. Ct 304, 310 (1981) ("The credibility of witnesses, particularly, is a preserve of the trial judge upon which an appellate court treads with great reluctance").

It does not follow, however, that the findings, taken together, proved parental unfitness by clear and convincing evidence. See *Care & Protection of Laura, supra* at 793. "Clear and convincing proof involves a degree of belief greater than the usually imposed burden of proof by a preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases." *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849, 871 (1975). The finding of parental unfitness depends to a large extent on the underpinning that Flanders sexually abused Eleanor. That finding is based entirely on one allegation of inappropriate touching that was later withdrawn. Although the judge was not required to believe Eleanor's recantation, in the absence of any corroboration or physical evidence of sexual abuse, it

---

[9]Four witnesses testified at the care and protection proceeding on July 23, 1990: the Boston police sergeant who investigated the allegation that Flanders sexually abused Eleanor, the department case worker, the court investigator, and the mother.

cannot be said that parental unfitness was proved by clear and convincing evidence. In addition, although the judge's reliance on profile evidence that Flanders demonstrated characteristics associated with child sexual offenders might be appropriate in some circumstances, such evidence cannot support a finding that sexual abuse actually occurred. *Commonwealth* v. *Day*, 409 Mass. 719, 723-724 (1991). Thus, although the judge's findings were not clearly erroneous, the evidence on which they were based did not prove parental unfitness by clear and convincing evidence.

Counsel for the children argues that a "de novo" review is required on appeal because the judge's decision implicates constitutional rights. However, it is settled that, while the interest of parents in their relationship with their children is constitutionally protected, see *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 3 (1979),[10] it is not absolute. *Care & Protection of Robert*, 408 Mass. 52, 60 (1990), quoting *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 587 (1981). We conclude that the parent-child relationship is sufficiently protected by requiring that the judge "enter specific and detailed findings demonstrating that close attention has been given the evidence," and by requiring that the judge's findings prove parental unfitness by clear and convincing evidence. *Custody of Two Minors*, 396 Mass. 610, 619 (1986). Even where we have applied a heightened level of scrutiny on appellate review of constitutional claims, we have not subjected findings based on credibility determinations to "de novo" review.[11]

---

[10]See also *Stanley* v. *Illinois*, 405 U.S. 645, 651 (1972) (integrity of family unit has found protection in due process clause of Fourteenth Amendment to the United States Constitution, the equal protection clause of the Fourteenth Amendment, and the Ninth Amendment to the United States Constitution).

[11]See *Murphy* v. *I.S.K.Con. of New England, Inc.*, 409 Mass. 842, 849 (1991), quoting *Bose Corp.* v. *Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) ("in cases raising First Amendment issues we have repeatedly held that an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the

Appellate review in custody appeals is not done to assess the evidence de novo, but rather to determine whether the judge's findings were clearly erroneous and whether they proved parental unfitness by clear and convincing evidence. See, e.g., *Care & Protection of Martha*, 407 Mass. 319, 328 (1990); *Care & Protection of Stephen*, 401 Mass. 144, 151 (1987) ("judge's findings are supported by the evidence and are thus not clearly erroneous"); *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 397 Mass. 659, 664 (1986) ("subsidiary findings fully support[ed] [judge's] ultimate conclusion, and the record in turn supports his subsidiary findings").[12]

We were informed at oral argument that the mother has filed a complaint for divorce against Flanders.[13] This information, together with the considerations cited by the Appeals

judgment does not constitute a forbidden intrusion on the field of free expression' ").

See also *Commonwealth* v. *Tucceri*, 412 Mass. 401, 409 (1992) (if constitutionally based new trial claim is denied by judge who did not preside at original trial, court will exercise own judgment on factual as well as legal conclusions); *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977), *S.C.*, 398 Mass. 806 (1986) (ultimate findings and rulings that bear on issues of constitutional dimension are open for review).

[12]This court has reversed a lower court's custody decisions where the findings were clearly erroneous, or where the properly supported findings were insufficient to prove current parental unfitness by the proper legal standard. See, e.g., *Custody of a Minor (No. 2)*, 392 Mass. 719, 725 (1984); *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 121 (1984); *Wilkins* v. *Wilkins*, 324 Mass. 261 (1949); *Richards* v. *Forrest*, 278 Mass. 547, 551-552 (1932).

[13]Similar information was presented to the Juvenile Court judge and to the Appeals Court. The judge concluded, "Though on numerous occasions, [the mother] has claimed that she will divorce [Flanders], she has failed to do so, and has recently indicated that she will not."

The Appeals Court stated, "Although we conclude that the award of permanent custody should be set aside, that conclusion is of little practical significance in light of the information we received at oral argument concerning subsequent events. We were informed that the mother has permanently separated from Flanders and is awaiting an imminent court hearing on her complaint for divorce. As Flanders' presence in the home was the basis for the award of permanent custody to [the department], the need for such an order may no longer exist." *Custody of Eleanor*, 32 Mass. App. Ct. at 671.

Court and any other relevant changed circumstances, should be evaluated in determining any appropriate future care and protection for these children. See note 7, *supra*. G. L. c. 119, § 26.[14] *Custody of Two Minors, supra* at 621. The judgment of the Juvenile Court granting the department permanent custody of Eleanor and Carol is reversed and the matter is remanded to the Juvenile Court for further proceedings consistent with this opinion.

*So ordered.*

---

[14]General Laws c. 119, § 26 (1990 ed.), states in part: "On any petition filed in any court pursuant to this section, the department, parents, persons having legal custody of, counsel for a child, the probation officer, guardian or guardian ad litem may petition the court not more than once every six months for a review and redetermination of the current needs of such child whose case has come before the court."