A Probate and Family Court judge found the mother currently unfit to parent her son, Pavel, and issued a decree granting permanent guardianship of the child to the mother's uncle and his wife (guardians). See G. L. c. 190B, § 5-204. The mother appeals, contending that the judge made several erroneous findings of fact and, further, that the guardian ad litem (GAL) did not follow Probate and Family Court Standing Order 1-08 when writing her report. Because the challenged findings do not fatally undermine the decree, and the judge was free to weigh the GAL's report irrespective of her adherence to the standing order, we affirm.
Discussion. 1. Challenged findings of fact. We review challenged findings of fact for clear error. See Adoption of Elena, 446 Mass. 24, 30-31 (2006) ; Custody of Eleanor, 414 Mass. 795, 799 (1993).
a. Mother's bipolar disorder. The mother claims that the judge erroneously credited the GAL's speculation that the mother suffered from bipolar disorder. We disagree.
In finding no. 119, the judge wrote: "Given [the mother's] difficulty in controlling her impulses, including anger, her lack of insight into her behavior, and diagnoses of bipolar disorder and ADHD [the GAL] recommended that [the mother] undergo a thorough psychiatric/psychological evaluation to determine whether her conditions are organic or psychological, or both." The context of this finding demonstrates that this is not a finding of fact "deduc[ed] from the evidence, essential to the judgment in the case," but "merely a recitation of the evidence" from the GAL's report. Care & Protection of Yetta, 84 Mass. App. Ct. 691, 694 n.7 (2014), quoting Commonwealth v. Isaiah I., 448 Mass. 334, 339 (2007). Further, the judge did not rely on the contested claim of a specific bipolar disorder diagnosis when issuing the decree. Instead, the judge focused on the mother's "erratic" behavior, "anger issues," and other "mental health issues." See Guardianship of Clyde, 44 Mass. App. Ct. 767, 775 n.12 (1998) (even if there were errors, "these errors are harmless and do not affect the judge's conclusion" on fitness).
b. State of the radio station. The mother contends that the evidence contradicts finding no. 31, which states that "[w]hen [the maternal grandmother] lived there, the radio station [a renovated building] was neat and clean. When she left and [the mother] lived there alone with [Pavel], it became cluttered, with garbage and dirty clothes." This challenge is also unavailing.
Finding no. 31 comes directly from the testimony of one of the guardians. Although the mother cites reports from the GAL, a Department of Children and Families (DCF) social worker, and the local police that contradict this specific testimony, "[i]t was for the judge to decide whom to believe with respect to conflicting versions of, or explanations for, particular events." Adoption of Daniel, 58 Mass. App. Ct. 195, 200 (2003). Given the guardian's frequent interactions with the mother and Pavel, the judge was free to credit the guardian's testimony over reports from other individuals who saw them less often.
c. Camper's amenities. We are similarly unpersuaded by the mother's contention that the evidence contradicts finding no. 41, which states that "[t]he camper [where the mother and Pavel occasionally lived] lacked electricity, running water or sewer, heat or cell phone reception and the interior was moldy and musty." While there was testimony from a DCF social worker that she found no issues with the camper during a visit, this does not negate testimony from other witnesses who visited the property at other times. The judge was free to weigh the conflicting evidence and resolve any contradictions. See Adoption of Daniel, 58 Mass. App. Ct. at 200. Moreover, the judge did not rest the decree on the state of the camper but, rather, focused on the mother's mental and emotional instability. See Guardianship of Clyde, 44 Mass. App. Ct. at 775 n.12.
d. Crediting mother's experts. Last, the mother's contention that the judge erroneously omitted positive aspects of her experts' testimony is also unavailing. The positive aspects of the mother's experts' testimony contradicted testimony from other witnesses, and the judge, whose obligation it was to weigh the evidence and resolve any conflicts in the testimony, was well within her authority to credit the testimony of some witnesses but not others. See Adoption of Daniel, 58 Mass. App. Ct. at 200.
2. GAL's report. The mother's final challenge pertains to the GAL's failure to adhere to the guidelines set out in Probate and Family Court Standing Order 1-08. However, the mother points to no case, nor are we aware of any, that invalidates a GAL report on that basis. Rather, the statute regarding the appointment of GALs, which provides that "[a]ny judge of a probate court may appoint a guardian ad litem to investigate the facts of any proceeding pending in said court relating to or involving questions as to the care, custody or maintenance of minor children," gives judges wide latitude in the appointment of GALs. G. L. c. 215, § 56A.
Here, the judge appointed a GAL with decades of experience in investigating child welfare cases. The judge, therefore, had no reason to doubt the GAL's qualifications. Accordingly, we defer, as we must, to the judge's credibility determinations.[3] Custody of Eleanor, 414 Mass. at 799. See Sacco v. Roupenian, 409 Mass. 25, 29-30 (1990) (whether basis of expert's opinion is sound goes to weight, not admissibility).
Decree appointing guardian of minor affirmed.

Notably, the GAL and many of her sources testified at trial, giving the mother ample opportunity to impeach the GAL and attack the contents of her report. See Jenkins v. Jenkins, 304 Mass. 248, 253 (1939) (GAL report admissible when all parties could attack it during trial and many of its sources testified).