NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-536

CARE AND PROTECTION OF EDWARD.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother of Edward appeals from a judgment of the Juvenile Court committing Edward to the permanent custody of the Department of Children and Families (department). The trial judge determined that mother was currently unfit to parent Edward due to untreated mental health issues, which, in turn, resulted in a lack of housing and employment stability, and an inability to meet Edward's needs.[2] Edward has submitted a brief in which he requests that we affirm the judgment. The mother argues that the judge abused his discretion, and instead of granting custody to the department, he should have ordered the

_____

[1] A pseudonym.

[2] Edward's father, who was incarcerated at the time of trial, has not had contact with the mother or Edward since 2011. His trial was bifurcated from the mother's trial and the judge found him currently unfit and terminated his parental rights. The father has not appealed.

department to develop a reunification plan. The mother also challenges two of the judge's findings (and related conclusions of law) as clearly erroneous and asserts that the department failed to make reasonable efforts to return Edward to her custody. We affirm.

As an initial matter, we note that the mother's parental rights were not terminated, and the judge did not dispense with the need for her consent to adoption. Consequently, the mother may petition the court, under G. L. c. 119, § 26 (c), for a review and redetermination of Edward's current needs. At oral argument, which was held on December 5, 2024, the mother, who appeared pro se, represented that her circumstances had changed such that she is now capable of properly providing for her son. However, as an appellate court, we are allowed to consider only rulings by the trial courts and the evidence that was before those courts and may not consider new information. Accordingly, should she wish to do so, the mother must first present her argument and evidence supporting it before the judge who presided over the prior proceedings. We take no view on whether the mother should pursue such a petition. We simply note that this avenue is available to her.

We now turn to the merits of the mother's appeal. We need not provide a detailed summary of the judge's findings. It suffices to note the following relevant facts. Edward was born

prematurely, and substance exposed on August 19, 2010.  The department became involved with the family at that time, and again in 2013, after the mother sought services from the department due to her belief that Edward had been sexually abused by her mother (grandmother) and the grandmother's boyfriend.  The department engaged with them once more in 2019 in response to reports that the mother neglected to send Edward to school regularly.  The department began working with the mother to assist her in obtaining services for both herself and for Edward, but she remained uncooperative.  During this time, the mother made numerous reports claiming that Edward was being sexually assaulted by unknown persons, and that the police and Federal Bureau of Investigation were working together to turn her son away from her.  At a later point, the mother claimed that the department had installed cameras in her home.

The mother eventually stopped sending Edward to school during the 2019-2020 school year and was charged with failure to send her child to school.  The mother then chose to homeschool Edward.  The judge found that this decision resulted in significant harm to Edward's educational progress.  In addition, the mother neglected to bring Edward to see his pediatrician from June 2019 to April 2021.  Edward's health declined during this period.  He gained approximately sixty pounds, used a walker, and had trouble walking long distances.

3

In June, 2021, the department filed a care and protection petition and sought temporary custody of Edward. Edward was removed from the mother's custody on June 25, 2021, and placed in a kinship foster placement with his maternal aunt. Throughout the following year, the mother was inconsistent in visiting Edward and refused to engage in mental health services or meet with the department. The mother was hospitalized around the same time Edward was removed from her care and was diagnosed with an unspecified schizophrenic spectrum and other psychotic disorder after she presented as extremely paranoid. She was hospitalized again in May and August 2022 and diagnosed with bipolar disorder, posttraumatic stress disorder, anxiety, and depression. Notwithstanding these diagnoses, by the time of trial, the mother had made significant progress. She was engaged in psychiatric services and was more cooperative with the department. She also was more consistent with her visitation schedule. However, the judge found that despite this improvement, the mother had not demonstrated a sufficient commitment to addressing her mental health needs such that she could assume parental responsibilities. He found that in addition to the mother's mental health struggles, she had not demonstrated an ability to meet Edward's medical, educational, and emotional needs. Nor was the mother able to provide stable housing. In 2018, due to her unemployment, the mother had

4

fallen behind on rent and was evicted from her apartment.  She later lost her housing, obtained through the South Middlesex Opportunity Council (SMOC), where she had been residing with Edward at the time he was removed because, without custody of Edward, she no longer met the shelter's requirements.

Meanwhile, Edward's health and education improved significantly while residing with his aunt.  The judge noted that Edward is "very perceptive" regarding his mother's issues and was "comfortable" living with his aunt, her fiancé, and his cousin, with whom he had developed a sibling relationship.

Discussion.  The mother first argues that two of the judge's findings and related conclusions of law, with respect to her housing situation, are clearly erroneous.  The mother is correct that it is not completely accurate that she was "evicted" from SMOC housing.  Rather, she lost such housing because Edward was no longer living with her, and the Housing Court proceeding against her ended not in an eviction, but in an agreement for judgment;[3] however, these discrepancies are not material because the mother's housing instability was only one factor the judge considered in reaching his conclusion.  See

_____

[3] We also note that the judge was entitled to credit the testimony of SMOC's division director about the difficulties the mother, who had been "terminated" from the shelter and evicted in 2018 from other housing, would face in obtaining housing in the future.  See Custody of Eleanor, 414 Mass. 795, 800 (1993).

Adoption of Yalena, 100 Mass. App. Ct. 542, 553 (2021) (even if contested findings are erroneous, unfitness conclusion stands if supported by other clear and convincing evidence). Far more significant was the mother's inability to address her son's needs due to her mental health challenges. As the judge noted, the mother had made progress at the time of trial. Nonetheless, the judge properly considered the mother's past and did not, as the mother asserts, abuse his discretion or err as a matter of law in reasoning that her prior history was indicative of her current fitness. See Adoption of Katharine, 42 Mass. App. Ct. 25, 32-33 (1997) (a judge "may consider past conduct to predict future ability and performance").

We further conclude that the evidence presented at trial demonstrates that the department made reasonable efforts to assist the mother, including with housing, throughout its involvement with her and Edward. Although the mother raises this issue for the first time on appeal and, therefore, we need not consider it, see Adoption of Gregory, 434 Mass. 117, 124 (2001), the record supports, by a fair preponderance of the evidence, the judge's determination that the department's efforts to provide assistance towards reunification were reasonable under the circumstances. See Care & Protection of

6

Rashida, 489 Mass. 128, 137 (2022).  Accordingly, the judgment

is affirmed.

So ordered.

By the Court (Vuono, Singh &
  Hershfang, JJ.[4]),

Clerk


Entered:  January 13, 2025.

---

[4] The panelists are listed in order of seniority.