NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-127

ADOPTION OF UTAH (and two companion cases[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father appeals from portions of three decrees entered in the Juvenile Court declining to order postadoption visitation between the father and his three children.  Concluding that the judge acted within her discretion in ordering that the preadoptive parents determine visitation, we affirm.[2]

Background.  The mother and the father have three children together, who were born in 2015, 2017, and 2019, respectively.  The mother is from Puerto Rico and her parents, who are the

---

[1] Adoption of Brendan and Adoption of Elise.  The children's names are pseudonyms.

[2] The judge also issued orders leaving posttermination visitation between the parents and the children to the discretion of the Department of Children and Families.  The father does not challenge this portion of the decrees.  Neither the mother nor the children appealed any portion of the decrees.  After argument was scheduled, the children filed a motion to join in the father's brief, which was allowed.

preadoptive parents, continue to reside there. The Department of Children and Families (DCF) first became involved with the family in 2015 after a G. L. c. 119, § 51A report (51A report) was filed alleging that the father struck the mother in the face in the presence of the mother's oldest child.[3] During the investigation, the mother and the father denied a history of domestic violence and the mother said that the mark on her face was a "hickie." The investigation deemed the allegations supported. Over the next four years, at least twelve 51A reports were filed regarding the family, many of which involved domestic violence. In 2016, the father was incarcerated after assaulting the mother. DCF was awarded custody of the two older children, Utah and Brendan, in October 2018 after it received another 51A report regarding domestic violence between the mother and the father. DCF was awarded custody of the youngest child, Elise, in 2019 when a DCF worker found drugs in the child's diaper bag.

In 2018 and 2019 the mother and the father had in-person visitation supervised by DCF. The judge found the father was attentive and cooperative during visits. In 2020, the children were placed with the preadoptive parents in Puerto Rico, and the

---

[3] That child was placed with her biological father in 2018 and dismissed from the care and protection petition. In a related proceeding, a judge granted full custody of the child to her father. Utah, Brendan, and Elise have a different father.

visits became virtual, scheduled at prearranged times.  The preadoptive parents, DCF, and the father worked together and utilized Zoom at prearranged times.  In January, 2021, virtual visitation between the father and the children stopped.

While the children were in DCF custody, reunification was hampered due, in part, to the parents' continual denial or minimization of the domestic violence history.  DCF developed service plans for both the mother and the father based on the concerns that the parents were unable to maintain an environment for the children free of domestic violence.  The judge found that the father denied a history of violence despite the multiple reports of physical altercations with the mother and past restraining orders from neighbors and the mother of his older children.  The father claimed the mother fabricated the allegations of domestic violence, and he had limited insight into the impact of the domestic violence on his ability to parent the children.  The father did not consistently engage in the recommended individual counseling, was terminated from a program intended for perpetrators of domestic violence, and did not complete a substance abuse evaluation despite testifying that he purchased heroin "on the street" and used marijuana daily to self-medicate depressive symptoms.

<u>Discussion</u>.  The father does not challenge the unfitness finding, the termination of his parental rights, or the goal of

3

adoption for the children.  He argues only that the judge erred in finding that an order of postadoption visitation was not in the best interests of the children.  "A trial judge's decision whether to order visitation between a child and a parent whose parental rights have been terminated is reviewed for an abuse of discretion."  Adoption of Xarissa, 99 Mass. App. Ct. 610, 623-624 (2021).

> "In determining whether to exercise the authority to order visitation, a judge must ask two questions:  First, is visitation in the child's best interest?  Second, in cases where a family is ready to adopt the child, is an order of visitation necessary to protect the child's best interest, or may decisions regarding visitation be left to the judgment of the adoptive family?"

Adoption of Ilona, 459 Mass. 53, 63 (2011).  "[A] judicial order of postadoption contact may be warranted where the evidence readily points to significant, existing bonds between the child and a biological parent," Adoption of Vito, 431 Mass. 550, 563 (2000), but should enter "only if such an order on balance, is necessary to protect the child's best interest."  Adoption of Ilona, supra at 65.

Here, in determining the best interests of the children, the judge recognized that when the children were first in the custody of DCF, the father had visited consistently and appeared to have "a good bond" with them.  The judge found that both parents were able to "go with the flow" and came to visits prepared with food and activities.  When the children were

4

placed with the preadoptive parents in 2020, the visits became virtual, and the preadoptive parents worked with DCF to schedule the visits, which initially "were consistent and without issue." However, as of trial in 2023, the father had not visited for over two years. The judge found that DCF had not been able to locate the father; his phone was off when DCF contacted him, and he had not participated in the monthly Zoom visits. The father denied any responsibility for the lack of visitation blaming the time difference between the Commonwealth and Puerto Rico and the schedules of the preadoptive parents.

Meanwhile, the children thrived in the preadoptive home and had stability and consistency with the preadoptive parents. As to the father, the children did not refer to him by any "common terms for a father," using a nickname instead. The judge considered the needs of each child separately and found that the preadoptive parents met each child's physical and special needs. The judge also considered that the disruption in visits "seemed to stem" from the preadoptive parents' concerns regarding the trauma the children experienced while in the care of their parents. The judge recognized that the preadoptive parents were attuned to the children and were willing to support and schedule visitation, but that DCF could not locate the father.[4] We

_____

[4] The inference drawn by the judge from the social worker's testimony, that the preadoptive parents were willing to

5

conclude that the judge's findings were amply supported by the record, and she did not abuse her discretion in finding that it was not in the best interests of the children for an order of visitation to enter and that the issue of visitation should be left to the sound judgment of the preadoptive parents.

Decrees affirmed.

By the Court (Vuono,
Massing & Allen, JJ.[5]),

Clerk

Entered:   December 1, 2025.

---

facilitate Zoom visitation, is not clearly erroneous.  See Custody of Eleanor, 414 Mass. 795, 799 (1993).

[5] The panelists are listed in order of seniority.

6