NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1273

JOHN A. CELATA

vs.

ANGELA J. CELATA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial, a Probate and Family Court judge entered a modification judgment awarding the mother primary physical custody of the parties' child during the school year and amending the father's parenting time.  The father appeals, arguing that the judge made certain procedural errors, relied on erroneous findings of fact, and committed an abuse of discretion in determining the best interests of the child.  We affirm.

Background.  We summarize the relevant facts as found by the judge, supplemented where necessary by the record.  The parties were married in February 2018.  The husband and wife each retained their own residences after the marriage and, other than a short period in July 2018, have resided in separate

homes.  The mother lives in Amesbury in a condominium unit that she owns, and the father lives in Gloucester in a two-family home that he owns.  The father is employed full-time, and the mother is employed part-time.

The parties have one child, who was born in September 2018. The same month that the child was born, the father filed a complaint for divorce, and the mother filed an answer and a counterclaim for divorce.  The 2021 divorce judgment assigned the parents shared legal and physical custody of the child and instituted a shared parenting plan consisting of a 2-2-5-5 rotating schedule.[1]  The judge acknowledged that the relationship between the mother and the father had been "tumultuous at times," but that they had "developed a system to effectively communicate about [the child] by speaking primarily through email or text message."

During the three years leading up to the modification trial, the child thrived with the love and care of each parent. However, the mother and the father struggled to communicate with one another about matters concerning the child.  In September 2021, for example, six months after the judgment of divorce, the

---

[1] The 2-2-5-5 rotating schedule provides that the child will be with the mother for two consecutive days, then with the father for two consecutive days, then the child will return to the mother for five days and return to the father for five days.

2

father filed a complaint for modification requesting an order that "Mother is not to harass Father or disparage Father in front of [the] child." The mother, in turn, counterclaimed for modification and filed a complaint for contempt. Her complaint alleged that the father failed to communicate with her about the child's health; that he refused to include the mother in his choice of where the child would attend daycare while the father was caring for the child; and that he interfered with her FaceTime calls with the child. After a full hearing, the father was adjudicated not in contempt of court.

In 2023, when the parties could not agree where the child, by then five years old, should attend full-time kindergarten, the father amended his complaint for modification. The mother sought to have the child attend school in Amesbury, while the father sought to have the child enrolled in school in Gloucester. At that time, the child was attending a preschool in Gloucester when in the care of the father.

The judge conducted a trial that lasted three days, heard from four witnesses, and considered thirty-one exhibits. In a thorough and comprehensive decision, the judge acknowledged that both the mother and the father love the child and are good parents. Despite their many positive parental attributes, however, they could not agree where the child should attend school. The judge noted that the parenting schedule then in

effect was no longer in the child's best interest during the school year because of the distance and travel time between the parents' residences. The judge concluded that it was in the best interest of the child to be in the primary care of the mother during the school year and, as a result, attend school in Amesbury.[2] The judge considered the fact that the mother was able to take the child to school in the morning whereas the father needed the assistance of his family due to his work schedule; that the mother worked part-time and her place of employment was located close to the Amesbury school that the child would attend; and that, while the mother kept the father informed about the child, the father had difficulty effectively communicating with the mother about the child. Finally, while acknowledging that both parents had enrolled the child in extracurricular activities in Amesbury and Gloucester, the judge held that, if the parties could not agree on the child's activities, then each parent would be able to select one

_____

[2] Instead of the 2-2-5-5 parenting schedule, the father's parenting time changed to every Wednesday after school (or 5 P.M. until 7:30 P.M.); every other weekend from Friday after school (or 5 P.M.) until Monday morning return to school (or 5 P.M.); and Friday after school until Saturday at 4 P.M. on weekends that the father does not have the child. When the child was not in school, the 2-2-5-5 parenting plan set forth in the Judgment of Divorce remained in effect.

4

activity in Amesbury because the child would reside there for most of the school year.

Discussion. We review a modification judgment pursuant to G. L. c. 208, § 28, to determine "(1) whether the factual findings are 'clearly erroneous,' giving 'due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses'; (2) whether there were errors of law;" and (3) whether the judge committed an abuse of discretion (citations omitted). Pierce v. Pierce, 455 Mass. 286, 293 (2009). "The standard of review reflects substantial, but not unlimited, deference to the judge who saw the witnesses and heard the evidence." Id.

Modification of the custody provisions may be ordered if a judge finds that a substantial change in the circumstances of the parties or the child has occurred and finds modification to be in the child's best interests. See G. L. c. 208, § 28. In this case, it is undisputed that the material change in circumstances was that the child reached an age requiring full-time enrollment in a school district, and the parents could not mutually agree on the child's school placement. The father disputes, however, that the child's best interests would be served by attending school in Amesbury with the mother rather than in Gloucester with him. To that end, the father claims that, in deciding to award the mother primary physical custody

5

of the child during the school year, the judge made several erroneous findings of fact, committed an error of law by failing to rule in the father's favor on claim preclusion, and abused his discretion by penalizing the working father and failing to adequately consider the best interests of the child.

We first address the father's claims that several of the judge's findings of fact are clearly erroneous. "A finding is clearly erroneous when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Adoption of Larry, 434 Mass. 456, 462 (2001), quoting Custody of Eleanor, 414 Mass. 795, 799 (1993). Specifically, the father contends that the judge made the following erroneous findings of fact: the specific location of the father's worksite; which elementary school in Gloucester the child would attend if the child lived with the father; the father's intolerance of inquiries by the mother; and the father's failure to appropriately communicate with the mother. The father also takes issue with the judge's factual finding that the mother invited him to attend the child's activities and that the mother works "mother's hours" and will be available to care for the child after school.

We have reviewed the record and disagree with the father's characterization of the judge's findings, concluding that they

6

were not clearly erroneous.  For example, the father testified that his job as a utility worker for National Grid is primarily based in Gloucester.  On cross-examination, however, he also testified that, at times, he is required to work in other locations as need be.  Thus, the judge's factual finding that the father's worksite can vary depending upon the specific need of his employer is not inaccurate or erroneous, even though the father primarily reports to a job location in Gloucester. Similarly, as it relates to the mother's work schedule, the judge correctly noted that she works part-time at a company that is located ten minutes from her house and plans on assuming "mother's hours" when the child is enrolled in school and will remain available to care for the child after school.  Again, this finding of fact is not erroneous, because, while the mother was working approximately twelve hours per week at the time of the modification trial, she planned to increase her hours but would still be available to care for her child after school.  We also note that this is not a case where the judge ignored or failed to consider both the mother's and father's circumstances when determining which school district would be in the child's best interests.  In fact, the judge made specific and extensive findings of fact about both parents' circumstances, of which the father challenges fewer than ten.

7

In short, the father's claims regarding the facts boil down to disagreements about the judge's credibility determinations and the weight the judge gave to the parties' testimony. Determinations of credibility and evidentiary weight are matters for the fact finder (here, the trial judge), "not an appellate court." Patriot Power, LLC v. New Rounder, LLC, 91 Mass. App. Ct. 175, 181 (2017). See Commonwealth v. Rivera, 482 Mass. 259, 269 (2019) ("fact finder must determine weight and credibility of testimony" [citation omitted]). The judge, having heard the parties' testimony and reviewed the evidence admitted during the three day trial, was in the best position to determine the parties' credibility and to weigh the evidence. There is no support in the record to disturb his findings or determinations of credibility.

Next, the father claims that the judge failed to give preclusive effect, and thus committed an error of law, to the facts determined in the 2021 divorce judgment and the 2022 contempt judgment. We disagree, as G. L. c. 208, § 28, permits a modification of an earlier judgment, provided that the judge finds that a material and substantial change in the circumstances of the parties has occurred, and the judgment of modification is necessary in the best interests of the children. Accordingly, there was no error of law, and the judge appropriately considered both the divorce judgment and the

8

contempt judgment in his determination that the best interests of the child would be served by attending school in Amesbury.

Finally, the father claims that the judge abused his discretion in awarding primary physical custody to the mother because the child was enrolled in preschool in Gloucester and, he argues, the judge failed to consider the risks of disrupting the child's life or balance the benefits and risks of the change in school. The father also claims that the judge abused his discretion by penalizing the working father. Abuse of discretion is defined as "a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Here, the judge conducted a three-day trial and considered thirty-one exhibits and the testimony of four witnesses. In the end, the judge concluded that both parents were good parents and loved the child and the parents should continue to share legal custody of the child. The judge specifically found that there was no credible evidence that one school district would be superior to the other. Nevertheless, because the parents could not agree on whether the child should attend school in Amesbury or Gloucester, the best interests of the child required the judge to make this determination. As the judge found, and the

parties acknowledged, "the selection of one school district over the other school district directly impacts the parenting schedule and as a result of travel time, work schedules and [the child's] best interests." The judge found that the distance between the mother's and the father's homes made the existing parenting plan unviable; that the school in Amesbury was less than five minutes from the mother's home; that the mother's work schedule allowed her to be available to care for the child after school; and that -- while acknowledging that both parties at times struggled to effectively communicate with one another -- the mother had demonstrated a far superior ability to keep the father informed about the child. The judge also found that the child participates in extracurricular activities and has friends in both communities. In making these findings, the judge implicitly considered the potential impact of departing from the status quo on the child's interests. Furthermore, while the judge determined that the best interests of the child would be served by attending school in Amesbury, the judge did not disturb the parents' shared legal custody arrangement. He also limited the grant of physical custody to the mother to the school year, keeping in place the prior custody schedule during holidays and times that the child was not attending school.

In the end, the judge was tasked with making the difficult decision of selecting which school district was in the child's

10

best interest.  The judge's choice between a school in Gloucester and one in Amesbury would necessarily affect the other parent's scheduled time, given the distance and travel time between the two communities.  On this record and based on the thoughtful and considerate decision of the judge, we cannot say that the judge abused his discretion.

<u>Modification judgment, dated June 25, 2024, affirmed</u>.

By the Court (Desmond, Shin & Walsh, JJ.[3]),

*Paul Little*

Clerk

Entered:  January 12, 2026.

---

[3] The panelists are listed in order of seniority.