NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-224

ADOPTION OF ORR.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a two-day trial, a judge of the Juvenile Court found the mother unfit to parent Orr, terminated her parental rights, dispensed with her consent to adoption, and approved the adoption plan of the Department of Children and Families (department) for Orr.  On appeal, the mother contends the judge abused her discretion and erred by denying her requests for a trial continuance, finding her unfitness to parent Orr not temporary, endorsing the department's adoption plan, and concluding that the termination of her parental rights was in Orr's best interests.  She further argues that some of the

---

[1] A pseudonym.

judge's findings of fact and a conclusion of law were clearly erroneous.[2]  We affirm.[3]

1.  <u>Background</u>.  We summarize the judge's findings of fact,[4] supplemented by uncontested evidence from the record.

Orr was born in December 2020.  The next day the department received a report under G. L. c. 119, § 51A (51A report) alleging neglect of Orr by his mother after Orr's urine tested positive for marijuana.  The department's ensuing G. L. c. 119, § 51B investigation revealed that the mother used marijuana daily during her pregnancy, had postpartum depression following Orr's birth, and did not have custody of her three older children.

The mother has an extensive history with the department as an adult, dating back to 2009 when a 51A report was filed alleging neglect of one of her children, Ella.[5]  She does not

---

[2] Orr argues for affirmance of the decree.

[3] The father is not a party to this appeal.  He stipulated to the termination of his parental rights and executed an open adoption agreement on August 19, 2024.

[4] The trial judge made ninety "specific and detailed" findings and forty-seven conclusions of law in support of her decision to terminate the mother's parental rights, and the findings "demonstrate that close attention has been given the evidence."  <u>Custody of Eleanor</u>, 414 Mass. 795, 799 (1993).

[5] A pseudonym.

have custody of Ella[6] or her two other older children, Toni[7] and Luke.[8, 9] When the department initiated its care and protection petition, the mother had an open criminal child endangerment case resulting from allegations of neglect of Toni. Toni had sustained a cigarette burn on her leg; when asked how she got the burn, Toni reported that "mommy did it accidentally." Toni also had bruises on her body, matted hair, and lice. The mother admitted to sufficient facts on the child endangerment charge prior to the instant trial.

In January 2021, the department and Orr's mother and father agreed to a safety plan that prohibited the mother from being Orr's primary caretaker and assigned that role to the father and Orr's paternal grandmother. Six months later, on June 23, 2021,

---

[6] In June 2009, the department received two 51A reports alleging neglect of Ella by the mother and Ella's father due to ongoing domestic violence in the home. The allegations were supported following a 51B investigation. In August 2010, a 51A report was filed alleging neglect of Ella by the mother due to drug use, drug dealing in the home, and lack of supervision. The allegations of drug use and drug dealing were supported and the allegations of lack of supervision unsupported following a 51B investigation.

[7] In September 2016, May 2018, and July 2019, 51A reports were filed alleging neglect of Toni by the mother. The September 2016 and July 2019 allegations were supported. Two separate 51A reports were filed in September 2016 alleging neglect of Toni by her father. The allegations were supported.

[8] The children's names are pseudonyms.

[9] The mother was pregnant with her fifth child at the time of the instant trial.

the mother reported to a social worker that she no longer wanted to follow the safety plan.

Subsequently, on June 25, 2021, the department filed a care and protection petition, pursuant to G. L. c. 119, § 24, on behalf of Orr.[10] The father was granted conditional custody, with the condition that mother was prohibited from being Orr's sole caretaker. Over the next one and one-half years, Orr was raised by his father and paternal grandmother. On January 9, 2023, after a care and protection trial at which the mother did not appear, a judge found both the father and the mother unfit, granted the department permanent custody of Orr, and placed Orr with his paternal grandmother. In August 2023, the department learned that the paternal grandmother was permitting the mother and the father to live in her home and visit with Orr without the department's knowledge. As a result, the department placed Orr in a kinship foster home with his paternal grandfather.

Throughout this case, the mother was subject to numerous action plans, each of which identified the mother's tasks to maintain Orr's safety and welfare and to achieve his permanency

---

[10] On May 25, 2023, the department's goal for Orr changed from permanency through stabilization of the family to permanency through guardianship. On February 6, 2024, the goal for Orr changed to adoption.

4

through stabilization goal.[11]  The mother's tasks, which remained substantially the same across the action plans, included participating in individual therapy, taking medications as prescribed and meeting consistently with her prescriber, refraining from alcohol and illegal drug use, completing mental health programs, visiting with Orr as scheduled, meeting with the department, and attending all court hearings.  The mother failed to meaningfully engage in the department's recommended services and support from the beginning of this case in June 2021 until February 2024.

Moreover, the mother "did not consistently engage with the Department for the better part of this case."[12]  In fact, from October 2021 until June 2023, the mother did not have contact with the department, despite monthly attempts by the department to contact her.  Even after the department was back in contact with her, the mother repeatedly failed to allow the department access to her home and refused to engage in conversations with social workers, often demonstrating emotionally volatile

---

[11] From December 28, 2021, through July 31, 2024, the family was subject to five action plans, each of which enumerated the mother's tasks.

[12] The mother explained to the social worker that "she had not communicated with the Department on the advice of her criminal counsel attorney."  The judge did not credit this explanation "because the criminal case was pending at the inception of this case" and "Mother's reason also conflicts with a different reason she provided later."

behavior.  Due to the mother's actions, the department was not able to conduct a home visit until October 2023.  In addition, mother refused visits with Orr between August 2023 and March 2024.

The mother also has ongoing substance use and mental health issues.  She did not maintain her sobriety as required by her action plans.  She continued to test positive for fentanyl, cocaine, and amphetamines; she most recently tested positive for fentanyl in May 2024.  The mother also has a history of mental health issues, and "is presently diagnosed with Major Depressive Disorder, Generalized Anxiety Disorder, and Post Traumatic Stress Disorder."  The judge found she had stopped taking her prescribed Zoloft and Ativan at the time of trial.  While the mother engaged in some services to address her ongoing substance use and mental health issues, her involvement was inconsistent, demonstrating a "fail[ure] to satisfactorily address the issues that brought her to the attention of the Department."

The department proposed that Orr be adopted by his paternal aunt, with whom Orr had had day and overnight visits and who had already started to identify a pediatrician, daycare, and dentist for Orr.  The mother did not submit an alternative plan.  The judge concluded that the department's plan was in Orr's best interests.

6

2. Discussion. a. Request for trial continuance. The mother claims the judge abused her discretion and denied the mother a meaningful opportunity to be heard by denying her oral motions, made on the first and second trial dates in August 2024, to continue the trial. We are not persuaded. "Whether to continue any judicial proceeding is a matter entrusted to the sound discretion of the judge, and [her] decision will be upheld absent an abuse of that discretion." Care & Protection of Quinn, 54 Mass. App. Ct. 117, 120 (2002). The "[s]peedy resolution of cases involving issues of custody or adoption is desirable . . . ." Id. at 122, quoting Adoption of Emily, 25 Mass. App. Ct. 579, 581 (1998).

The judge's denial of a continuance of the trial date was a reasonable exercise of her discretion and did not amount to a deprivation of the mother's due process rights. First, the judge properly considered that by the time of trial the case had been pending for over three years. See, e.g., Adoption of Varik, 95 Mass. App. Ct. 762, 774 n.14 (2019) (finding no abuse of discretion in denial of father's motion to continue where case was more than two years old). Second, the trial had already been continued from June 12, 2024, when the mother had not appeared for trial.[13] Third, she also had not appeared at

_____

[13] In addition to not appearing for the initial trial date on June 12, 2024, and the August 19 and August 20, 2024 trial

7

the trial on January 9, 2023, where the court found Orr in need of care and protection and granted the department custody of Orr. Fourth, although the mother appeared on the first day of the August 2024 trial in this case, she departed before the case was called. Her trial counsel then requested a continuance, citing the mother's high-risk pregnancy without providing any supporting documentation (e.g., a note from a health care provider). While counsel for the mother also advised the judge that the stress of the trial was a reason for a continuance, the mother did not present any indication that her condition would be sufficiently improved in the future so as to allow her to participate in a trial. Finally, when the mother failed to appear on the second day of trial, her counsel again failed to provide any supporting documentation for the claim that the stress of the trial was a danger to the mother's pregnancy, despite clear notice of this issue. Accordingly, we conclude that the mother "had an opportunity to be heard at a meaningful time and in a meaningful manner," thereby satisfying due process. Care & Protection of Quinn, 54 Mass. App. Ct. at 122.

b. Unfitness determination. The mother next contends that the judge erred in terminating her parental rights because the facts as found were not sufficient to support a determination of

_____

dates, the mother failed to attend at least four other court proceedings between 2021 and 2024.

8

likely indefinite unfitness. We disagree. "To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). "Where there is evidence that a parent's unfitness is not temporary, the judge may properly determine that the child's welfare would be best served by ending all legal relations between parent and child." Adoption of Cadence, 81 Mass. App. Ct. 162, 169 (2012). "[W]e rely on the trial judge to weigh the evidence in order to determine whether there is a sufficient likelihood that the parent's unfitness is temporary." Adoption of Ilona, 459 Mass. 53, 59-60 (2011). "Because childhood is fleeting, a parent's unfitness is not temporary if it is reasonably likely to continue for a prolonged or indeterminate period." Id. at 60.

Predictions about a parent's unfitness must be "more than hypothetical," Adoption of Inez, 428 Mass. 717, 723 (1999), and are determined by "a parent's character, temperament, conduct, and capacity to provide for the child's particular needs, affections, and age." Adoption of Anton, 72 Mass. App. Ct. 667, 673 (2008). In determining future fitness, the judge "properly

9

may consider a pattern of parental neglect or misconduct." Adoption of Elena, 446 Mass. 24, 33 (2006).

Having carefully reviewed the record, "[w]e see no basis for disturbing the judge's view of the evidence." Adoption of Quentin, 424 Mass. 882, 886 n.3 (1997). Here, the judge properly relied on evidence that throughout most of the pendency of this case, the mother consistently failed to engage in services, cooperate with the department, visit with Orr, and attend court dates. The judge also properly considered evidence of the mother's ongoing mental health and substance use issues. Notably, the mother does not dispute that she is currently unfit to parent Orr. The judge's decision was firmly rooted in subsidiary findings that were proved by a preponderance of the evidence and clearly and convincingly demonstrated that the mother was unfit, such that termination of her parental rights was in Orr's best interests.

The judge properly considered all the evidence in determining that the mother was not likely to meet Orr's needs in the future. Contrary to the mother's claims, the judge did not disregard the mother's efforts to address her parental deficiencies in determining whether her unfitness was likely to continue into the foreseeable future. Instead, the judge explicitly found that the mother began weekly individual domestic violence counseling and a weekly four-week parenting

class and signed information release forms.  However, the mother only participated in domestic violence counseling and the parenting class in the month before trial, demonstrating a last-minute effort to engage in the services prescribed in the family's action plans since December 28, 2021.  The judge also found that while the mother had been receiving methadone treatment since October 2021 and engaging in individual therapy, the mother continued to test positive for illegal substances throughout the pendency of the case, including most recently in May 2024, and had not yet provided a therapy treatment plan to the department at the time of trial.  Moreover, while the mother did complete a substance use assessment on July 9, 2024, she did not inform her clinician about her May 2024 positive test for fentanyl and cocaine.

The judge was not required to provide the mother with infinite chances to address her parenting deficiencies.  See Adoption of Nancy, 443 Mass. 512, 517 (2005) ("In these circumstances, where the father has had ample opportunity to achieve fitness as a parent but has failed to follow through, it is only fair to the children to say, at some point, 'enough'"); Adoption of Ulrich, 94 Mass. App. Ct. 668, 677 (2019), quoting Adoption of Terrence, 57 Mass. App. Ct. 832, 835-836 (2003) (noting that "mere participation in the services does not render a parent fit 'without evidence of appreciable improvement in her

11

ability to meet the needs of the child[ren]'"). The mother's inability to comply with the action plans is "relevant to the determination of unfitness." Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 289 (1987).

The mother also challenges as clearly erroneous the judge's finding that the mother's "lack of awareness" of why she lost custody of her older children "impedes her ability to make meaningful changes to her parenting ability" as well as the judge's conclusion that the mother's "inability to control her behavior in her interactions with the Department" and "longstanding patterns of inconsistent follow through" demonstrate a "continuous failure to identify the deficits that brought her to the attention of the Department" and thus "render her unfit." "A finding is clearly erroneous when there is no evidence to support it, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (quotation and citation omitted). Custody of Eleanor, 414 Mass. 795, 799 (1993).

We discern no merit to either challenge. First, the judge's finding of the mother's impeded ability to make changes to her parenting ability is supported by evidence of the mother's failure to engage with the department and her blaming

12

of her children's respective fathers for her loss of custody. Second, the judge concluded that evidence of the mother's recurring angry outbursts and volatile behavior when interacting with the department, including repeated threats to social workers, and lack of engagement with services and the department, show an inability to control her behavior and to address her parenting deficits.

c. Adoption plan. Although at trial the mother neither objected to the department's adoption plan, nor proposed an alternative plan, she now argues on appeal that the department's proposed adoption plan was not sufficiently detailed and thus the judge could not meaningfully evaluate it.

In determining whether termination of parental rights is in the child's best interests, the judge must assess the "ability, fitness, and readiness of the [child]'s parents to assume parental responsibility" and meaningfully evaluate all placement plans, including the plan proposed by the department and any competing plans. Adoption of Ilian, 91 Mass. App. Ct. 727, 730-731 (2017), quoting Adoption of Vito, 431 Mass. 550, 568 n.28 (2000). "The adoption plan need not be fully developed to support a termination order; it need only provide sufficient information about the prospective adoptive placement 'so that the judge may properly evaluate the suitability of the department's proposal.'" Adoption of Willow, 433 Mass. 636, 652

13

(2001), quoting Adoption of Vito, supra.  See Adoption of Varik,
95 Mass. App. Ct. at 770-771.  We review the judge's assessment
for abuse of discretion.  See Adoption of Bianca, 91 Mass. App.
Ct. 428, 434 (2017).

The department proposed, and the judge approved, a plan
under which Orr would be adopted by his paternal aunt in Rhode
Island.  The department followed interstate protocols,
initiating an Interstate Compact on the Placement of Children
(ICPC) home study of the paternal aunt and her fiancé through
Rhode Island.  The ICPC placement was approved on July 24, 2024.
The department informed the judge that after placing Orr in the
aunt's home, it would request a permanency assessment through
the ICPC.

Contrary to the mother's contention (and even if it were
not waived), the department's proposed plan was not "vague and
hopeful, at best."  The judge appropriately considered that Orr
progressed from day visits to overnight visitation with his aunt
on August 10, 2024, and would transition to live in the aunt's
home after a dental procedure on September 24, 2024.  Further,
the aunt had already started to identify a daycare,
pediatrician, and dentist for Orr.

Similarly, contrary to the mother's claim, the judge's
finding that the department would take alternative steps
(adoption by recruitment) should the preadoptive aunt no longer

14

be a viable placement was not clearly erroneous.  Although the "backup plan" is not as detailed as the primary plan, it provides information sufficient for the court to determine in these circumstances that the department's proposed plans serve Orr's best interests.

Accordingly, the department's adoption plan, when viewed in conjunction with the evidence presented at trial concerning the mother's unfitness and Orr's best interests, was "sufficiently specific and detailed" to support both Orr's placement and the termination of the mother's parental rights (citation omitted).  Adoption of Willow, 433 Mass. at 652-653.

Decree affirmed.

By the Court (Sacks, Smyth & Wood, JJ.[14]),

Clerk

Entered:  October 14, 2025.

---

[14] The panelists are listed in order of seniority.